Christopher R. Belmonte, Esq.
Abigail Snow, Esq.
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 818-9200

*Counsel for RD Retiree Group, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.,* | Case No. 08-23529 (RDD) |
| Debtors, | Jointly Administered |

**OBJECTION OF READER'S DIGEST RETIREE GROUP TO
DISCLOSURE STATEMENT FOR THE PROPOSED JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF THE READER'S
DIGEST ASSOCIATION, INC. AND ITS DEBTOR AFFILIATES**

RD Retirees Group, LLC ("RDRG"), through its attorneys Satterlee Stephens Burke & Burke LLP, hereby files it objection (the "RDRG Objection") to the "Disclosure Statement for the First Amended Proposed Joint Chapter 11 Plan of Reorganization [(the "Plan")] of the Reader's Digest Association, Inc. and its Debtor Affiliates" (the "Disclosure Statement") [ECF Docket Nos. 219 and 220], and in support thereof respectfully submits:

**BACKGROUND**

1. On August 24, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. Pursuant to an order of this Court, the cases are being jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to section 1107

785704_5

and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On November 3, 2009, the Debtors filed their amended Plan and Disclosure Statement.

2. The RDRG was formed by certain former employees of the Reader's Digest Association, Inc. ("RDA") to protect their interests as participants in certain non-qualified retirement plans of RDA (the "Non-Qualified Plans").[1] The participants in the Non-Qualified Plans number approximately 300-350 people, and although including certain former executives, officers and directors and some current employees of the Debtors, is comprised predominantly of long-serving former employees such as writers, editors, salesmen and middle managers, some of whom are quite elderly. The claims arising from benefits under the Non-Qualified Plans are classed as "Other General Unsecured Claims" by the Debtors, have been variously estimated at between $75 million and $90 million, and pursuant to the proposed Plan are to share in a $3 million distribution, for a percentage payment on claims which the Debtors estimate at between 2.5 and 2.7%.

## JOINDER IN OBJECTION OF COMMITTEE

3. The RDRG joins with the objection of the Official Committee of Unsecured Creditors Committee as if fully set forth herein and respectfully raises the following additional points.

## THE DISCLOSURE STATEMENT DOES NOT ADEQUATELY DISCLOSE THE DEBTORS' UNFAIR DISCRIMINATION AGAINST MEMBERS OF CLASS 5

4. Based on communications from its members and former employees of RDA, the RDRG believes that its members, as well as participants in the Non-Qualified Plans who are not members of the RDRG, will overwhelmingly vote to reject the Plan. The Disclosure

---

[1] Four members of RDRG also serve as members of the Committee, Thomas M. Kenney, Michael John Bohane, Peter Davenport and Ross Jones.

Statement does not disclose the virtually inevitable need the Debtors will have to seek confirmation by "cram-down" pursuant to section 1129(b) of the Bankruptcy Code against Class 5 – "Other General Unsecured Creditors" – and thus the need to prove that the Plan does not discriminate unfairly with respect to Class 5, which the RDRG respectfully submits the Debtors will be unable to do.

5. This Court has utilized a four-part test in determining whether discrimination is impermissibly unfair pursuant to which the plan proponent must demonstrate that: (i) there is a reasonable basis for the discrimination, (ii) the plan cannot be consummated without the discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale. In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990). A more recent test is set forth in In re Quay Corporation, Inc., 372 B.R. 378, 385-386 (Bankr. N.D. Ill. 2007), In re Armstrong World Industries, Inc., 348 B.R. 111 (D. Del. 2006), and In re Dow Corning Corp., 244 B.R. 696, 701 (Bankr. E.D. Mich. 1999), which set forth what is known as the "Markell test" to recognize a rebuttable presumption of unfair discrimination that arises when there is: "(1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution." In re Dow Corning, 244 B.R. at 710; see Markell, *A New Perspective on Unfair Discrimination in Chapter 11,* 72 Am. Bankr.L.J. 227, 228 (1998).

6. While courts have upheld separate classification and treatment of unsecured creditors where the debtor proves that there is a legitimate business reason supporting the classification, the extent of the unfair discrimination here is massive and the treatment of

-3-

unsecured creditors is grossly disproportionate, especially where the Debtors have offered no proof that such treatment is necessary. The Debtors propose to pay Class 4 "Unsecured Claims Related to Operations" in full, while paying Class 5 at approximately 2.5 to 2.7% – a difference in distribution of nearly 98%. Courts have rejected confirmation on the basis of unfair discrimination where plans proposed grossly disparate treatment (50% or more) to similarly situated creditors. *See, e.g.,* In re Tucson Self-Storage, Inc., 166 B.R. 892 (9th Cir. BAP 1994) (providing for 100% for unsecured trade creditor and 10% to deficiency claim was unfair discrimination); In re Barney & Carey Co., 170 B.R. 17 (Bankr.D.Mass.1994) (denying confirmation where deficiency claim was to receive 100% and general unsecured 15%); In re Caldwell, 76 B.R. 643, 646 (Bankr.E.D.Tenn.1987) (confirmation denied where 100% of credit card debt was proposed to be paid but only 22.7% of all other unsecured debt would be paid).

7.    The Debtors have not articulated valid reasons for the extreme discrimination they are proposing for Class 5 creditors, nor have they demonstrated that the Plan cannot be consummated without such discrimination. The Debtors make no showing that the holders of Class 4 Claims, trade vendors with which they intend to continue to do business, will refuse to do business with the Debtors in the future in the absence of 100% payment of their prepetition claims, nor do the Debtors show that such trade vendors are the only trade vendors who can provide the goods or services required by the Debtors.

8.    The circumstances here are also factually unlike those of two recent cases in this District in which the Court approved a "gift" from one class to another. The recent case In re Journal Register Co. (J. Gropper) is inapposite to both the facts and equities presented here. In that case, there was only one class of unsecured claims and that impaired class overwhelming approved the plan. While an objecting creditor alleged that the plan unfairly discriminated by creating a segregated account funded by the secured lenders outside of the debtors' estates to be

-4-

785704_5

used to pay trade vendors, Judge Gropper found that the plan did not violate § 1129(b) as there was no issue of unfair discrimination *between* classes of creditors.  407 B.R. 520, 532 (Bankr. S.D.N.Y. 2009).  Another recently-decided case involving a gift from one class to another is equally distinguishable.  Unlike Journal Register, in DBSD North America, Inc. (J. Gerber), the unsecured class in which the objecting creditor was placed rejected the plan.  2009 WL 3491060, No. 09-13061 (REG) (Bankr. S.D.N.Y. 2009).  However, this case is also factually inapposite because all unsecured creditors (with the exception of a convenience class) received identical treatment under the DBSD plan and thus there was no issue of unfair discrimination *between* classes.  Id. at *18.  While the court cited Journal Register's analysis of the claim of unfair discrimination as "instructive," its analysis and ruling was based on whether the gift violated the absolute priority rule and thus the "fair and equitable" test under § 1129(b).  Id. at *26.

9. On its face the Plan proposed by RDA unfairly discriminates *between* classes of unsecured creditors and the facts and extreme inequities in this case call for this Court reach a different conclusion.  Indeed, it is hard to imagine how a bankruptcy court exercising its equity jurisdiction could find this massively disparate treatment between different classes of unsecured claims, which otherwise have the same legal rights and are *pari passi* in priority, to be anything but unfair discrimination.  Accordingly, the Debtors' Plan is unconfirmable in the face of its rejection by Class 5 creditors, as the Debtors will be unable to show that their Plan does not unfairly discriminate.

WHEREFORE, the RD Retiree Group, LLC, respectfully requests that this Court not approve the Disclosure Statement on the grounds that it does not disclose that the Debtors' Plan is unconfirmable because of its treatment of the Class 5 General Unsecured Creditors.

Dated: New York, New York
November 17, 2009

SATTERLEE STEPHENS BURKE & BURKE LLP
*Counsel for RD Retiree Group, LLC*

By:  /s/ Christopher R. Belmonte
    Christopher R. Belmonte, Esq.
    Abigail Snow, Esq.
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 818-9200

785704_5