Hearing Date:  June 18, 2010 at 10:00 a.m. (ET)
Response Deadline:  June 14, 2010 at 4:00 p.m. (ET)

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel to the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) ) Case No. 09-23529 (RDD) ) |
| Debtors. | ) ) Jointly Administered ) |

**NOTICE OF HEARING ON REORGANIZED
DEBTORS' FIFTH OMNIBUS OBJECTION TO CERTAIN BOOKS
AND RECORDS CLAIMS RELATED TO THE NON-QUALIFIED PLANS**

**TO THE CLAIMANTS IDENTIFIED ON SCHEDULES 1 AND 2 TO EXHIBIT A TO
THE OBJECTION:**

On April 30, 2010, the Reader's Digest Association, Inc. ("**Reader's Digest**") and certain of its affiliates (collectively, the "**Reorganized Debtors**"),[1] filed their Fifth Omnibus Objection to Certain Books and Records Claims Related to the Non-Qualified Plans (the "**Objection**") pursuant to the Order Approving Certain Omnibus Claims Objection Procedures, dated March 9,

---

[1]    The Reorganized Debtors, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Reorganized Debtors' corporate headquarters is:  1 Reader's Digest Road, Pleasantville, NY 10570.

2010 [Docket No. 686] (the "*Claims Objection Procedures Order*") entered by the United States Bankruptcy Court for the Southern District of New York (the "*Court*").

By the Objection, the Reorganized Debtors are seeking to disallow and expunge all or some of your claim in the Reorganized Debtors' chapter 11 cases.[2] **Your claims may be disallowed, reclassified, reduced or otherwise affected as a result of the Objection. Therefore, you should read this Notice and the enclosed Objection carefully**. Pursuant to **Rule 3007(e)(1) of the Federal Rules of Bankruptcy Procedure and the Claims Objection Procedures Order, claimants receiving the Objection should locate their names and claims on Schedules 1 and 2 of Exhibit A to the Objection.**[3]

To facilitate the consensual resolution of Objections, certain of the Reorganized Debtors' personnel and advisors will be available to discuss and potentially resolve objections to disputed claims without the need to file a formal response or attend a hearing. To facilitate such discussions, please contact David Meyer at Kirkland & Ellis LLP by (i) emailing david.meyer@kirkland.com or (ii) calling (212) 446-4800 within 21 calendar days after the date of this notice. Please have your proof(s) of claim and any related material available for such discussions. **Speaking with the Reorganized Debtors' personnel or the Reorganized Debtors' attorneys will not satisfy the requirement that you must reach an agreement before June 14, 2010 at 4:00 p.m. prevailing Eastern Time or file a response (each, a "*Response*") and attend the hearing (the "*Hearing*"), as discussed below.**

If you are **not** able to consensually resolve the Objection filed with respect to your claim as set forth above, you must file a Response with the Court in accordance with the procedures described below.

Your Response, if any, to the Objection must be in writing and conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, the Order Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 92] (the "*Case Management Order*") and the Claim Objection Procedures Order and be filed, in accordance with General Order M-242, electronically with the Court, with a hard copy marked "Chambers Copy" delivered to chambers pursuant to Local Bankruptcy Rule 9028-1.

As set forth in the Claims Objection Procedures Order, your Response must contain, at a minimum, the following,

a. a caption with the name of the Court, the name of the Reorganized Debtors, the case number and the title of the Objection to which the Response is directed;

b. a concise statement setting forth the reasons why the Court should not grant the Objection with respect to your claim, including the specific factual and legal bases upon which you rely in opposing the objection;

---

[2]   Pursuant to the Claims Objection Procedures Order and the Plan, notice of this Objection has also been provided to (a) the office of the United States Trustee for the Southern District of New York, (b) counsel to the Claims Oversight Committee, and (c) any persons who have filed a renewed request for notice in these chapter 11 cases after the Effective Date.

[3]   Pursuant to the Claims Objection Procedures Order, all affected parties shall receive personalized notice of the Objection.

    c.    copies of documentation or other evidence of your claim not previously filed with proof of such claim on which your Response is based (excluding confidential, proprietary or other protected information), copies of which <u>must</u> be provided to the Reorganized Debtors' counsel;

    d.    a declaration or other statement of a person with personal knowledge of the relevant facts that support your Response; and

    e.    the following contact information:

        (i)    your name, address, telephone number and facsimile number or the name, address, telephone number and facsimile number of your attorney or designated representative to whom the attorneys for the Reorganized Debtors should serve a reply to the Response, if any; or

        (ii)    the name, address, telephone number, facsimile number, and electronic mail address of the party with authority to reconcile, settle or resolve the Objection on your behalf.

Your Response must be filed with the Court and served so as to be *actually received* **prior to 4:00 p.m. prevailing Eastern Time on June 14, 2010** (the "***Response Deadline***") by the following parties:

| Reorganized Debtors | Counsel to the Reorganized Debtors |
|---|---|
| The Reader's Digest Association, Inc.<br>1 Reader's Digest Road<br>Pleasantville, New York, 10570<br>Attn: Andrea Newborn, Senior Vice President,<br>General Counsel and Corporate Secretary | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Paul M. Basta and Nicole L. Greenblatt |
| **Counsel to the Claims Oversight Committee** | **United States Trustee** |
| Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York 10169<br>Attn: Scott L. Hazan and David M. Posner | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Andrea Schwartz |

A hard copy of any response must also be delivered via first class mail to the Office of the United States Trustee for the Southern District of New York, Attn: Andrea B. Schwartz, 33 Whitehall Street, 21st Floor, New York, New York 10004, within one business day of the Response Deadline.[4]

The Hearing on the Objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York on **June 18, 2010, at 10:00 a.m. prevailing Eastern Time** at the Hon. Charles L. Brieant Jr.

---

[4]    Copies of the Objection, the Case Management Order, the Claim Objection Procedures Order, the Master Service List, the 2002 List and all pleadings and other papers filed in these chapter 11 cases may be obtained, free of charge, by visiting the Debtors' restructuring website at: http://www.kccllc.net/readers.

Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York, 10601-4104. **You must attend the Hearing if you disagree with the Objection and have filed a Response.**

If the Reorganized Debtors determine that discovery is necessary in advance of a hearing on an Objection, the Reorganized Debtors will serve notice on the affected claimant and its counsel of record that the scheduled hearing will be treated as a status conference during which the parties will request that the Court issue a scheduling order to facilitate litigation, if necessary. Such notice may be incorporated into the initial agenda letter for the hearing, or may be provided by separate notice.

**Absent reaching an agreement with the Reorganized Debtors resolving the Objection to a claim, failure to timely file and serve a Response as set forth herein and attend the Hearing may result in the Court granting the objection without further notice or hearing**. Upon entry of an order, affected creditors will be served notice of entry, and a copy, of the order.

Nothing in any Objection or in any Objection Notice is or shall be deemed to constitute a waiver of any of the Reorganized Debtors' rights to dispute any claim, assert any counterclaim, seek offset or recoupment, assert defenses, object to the Claim (or any other Claims or causes of action of any claimant or scheduled claims) on any ground not previously raised in an Objection or seek to estimate any claim at a later date (Unless the Court allows a Claim or specifically orders otherwise). In the event the Reorganized Debtors raise any subsequent objection to your claim, you will receive a separate notice**.**

Dated:  April 30, 2010             /s/ *Nicole L. Greenblatt*
     New York, New York      James H.M. Sprayregen P.C.
                               Paul M. Basta
                               Nicole L. Greenblatt
                               KIRKLAND & ELLIS LLP
                               601 Lexington Avenue
                               New York, New York  10022-4611
                               Telephone:      (212) 446-4800
                               Facsimile:      (212) 446-4900

                               Counsel to the Reorganized Debtors

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Counsel to the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, INC., *et al.*, | ) ) | Case No. 09-23529 (RDD) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

**REORGANIZED DEBTORS' FIFTH OMNIBUS**
**OBJECTION TO CERTAIN BOOKS AND RECORDS**
**CLAIMS RELATED TO THE NON-QUALIFIED PLANS**

The Reader's Digest Association, Inc. ("***Reader's Digest***") and certain of its affiliates

(collectively, the "***Reorganized Debtors***")[1] submit this objection (the "**Objection**") to the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Reorganized Debtors' corporate headquarters is:  1 Reader's Digest Road, Pleasantville, NY 10570.

allowance of certain books and records claims related to their Non-Qualified Plans (as defined herein) and respectfully represent as follows:

### **Preliminary Statement**

1.      As the Court is aware, there is a group of approximately 300 current and former employees (the "***Non-Qualified Claimants***") who hold general unsecured claims against the Debtors arising from the discontinuation and termination of certain unfunded, non-qualified retirement plans or deferred compensation arrangements that provided the participants with supplemental pension payments (the "***Non Qualified Plans***").

2.      The Non-Qualified Plans comprise several different plans or other deferred compensation arrangements and, therefore, the nature of the benefit obligations to individual participants varies depending on the terms of the particular plan as well as individual elections. For example, certain of the plans offered the participants an option to receive benefits either as a lump sum at retirement or in the form of a lifetime annuity.  Participants in other plans may have been receiving benefits on a monthly basis through the Debtors' payroll system, rather than annually. The Debtors' Supplemental Employee Retirement Plan ("***SERP***"), as another example, promised annual payments over a fixed 15-year term, commencing when the participant turns 65 years old. With the pool of Non-Qualified Claimants consisting of both current and former employees at various ages — and with many of the Non-Qualified Claimants participating in several of the Non-Qualified Plans — the Debtors' future payment obligations to individual Non-Qualified Plan participants run a wide spectrum and, in most cases, cannot be predicted with any certainty.

3.      To provide reporting and disclosure information for financial statements, government agencies and other interested parties regarding the value of their present obligations under the various Non-Qualified Plans, the Debtors have historically relied upon an annual report

prepared by their actuary, Mercer LLC ("***Mercer***").  Because future payments under the Non-Qualified Plans are unknown and depend upon, among other things, the mortality of the participants, Mercer uses standard actuarial assumptions to determine the likelihood and extent of future benefit payments. To determine the present value of future payment streams, Mercer then applies a discount rate selected by the company in accordance with Generally Accepted Accounting Principles ("***GAAP***").  Specifically, in accordance with published guidance reflected in the Statement of Financial Accounting Standards No. 87, the company selects a discount rate based on high–quality, fixed income investments currently available and expected to be available during the period to maturity of the pension benefits.   In the company's most recently issued balance sheet for the year ended June 30, 2009 — less than two months prior to the commencement of these chapter 11 cases — the company elected a discount rate of 6.5% (the applicable yield on AA rated corporate bonds as of June 30, 2009) to report their present benefit obligations with respect to the Non-Qualified Plans.[2]   The same discount rate was, therefore, utilized in the Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009 for The Reader's Digest Association, Inc. U.S. Pension and Postretirement Benefit Plans (the "***2009 Mercer Report***"), a copy of which is attached hereto as **Exhibit B**.[3]

4.     In connection with preparing their statements of financial affairs and schedules of assets and liabilities in these chapter 11 cases (the "***Schedules***"), the Debtors, with the assistance of Mercer, determined the individual claim amounts arising from the cessation of the Non-

---

[2]    Although the benefit maturities naturally vary for each participant, the Reorganized Debtors apply a single discount rate across all of the Non-Qualified Plans to report their present benefit obligations.  This is consistent with the concept of Statement of Financial Accounting Standards No. 87 and the notion that, if the Reorganized Debtors were to invest in high-quality, fixed income investments to finance future benefit payments they would look at a yield curve and invest on a pooled basis rather than for purposes of covering any one individual's pension payments, as the latter would not be cost-effective.  For the avoidance of doubt, the Reorganized Debtors have not entered into any hedging or other arrangements to secure the obligations under any of the Non-Qualified Plans, and all such obligations are unfunded and unsecured.

[3]    The Reorganized Debtors also submitted the 2009 Mercer Report into evidence as part of the hearing to consider confirmation of the Plan.  *See* Exhibit A to the Declaration of Thomas A. Williams in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and its Debtor Affiliates, filed on January 12, 2010 [Docket No. 535] (the "***Williams Declaration***").

Qualified Plans using the same assumptions and methodology reflected in the 2009 Mercer Report and the Reorganized Debtors' most recent financial statements. Accordingly, the scheduled claim amounts reflect application of a 6.5% discount rate, which the Reorganized Debtors believe is fair, reasonable and consistent with their financial reporting using relevant accounting guidance.

5.      During these chapter 11 cases, however, certain of the Non-Qualified Claimants have filed proofs of claim challenging the amount and/or classification of their scheduled claims relating to the Non-Qualified Plans. For example, Non-Qualified Claimants filed proofs of claim asserting, among other things, (a) general unsecured claims in amounts different than that set forth in the Schedules to reflect use of an alternative discount rate, (b) a secured claim, in whole or in part, with respect to payments due under the Non-Qualified Plans and/or (c) priority claims arising from the termination of the Non-Qualified Plans.

6.      Pursuant to the Reorganized Debtors' confirmed plan of reorganization (the "**Plan**"),[4] general unsecured claims, including claims arising from the discontinuation, rejection or termination of the Non-Qualified Plans, are entitled to receive distributions of their pro rata share of a $4 million pot of cash allocable to all holders of similarly situated general unsecured claims. Based on the Reorganized Debtors' current estimates of the total general unsecured claims in Class 5 of the Plan, recoveries are expected to be approximately 3-4% of the claim amount.

7.      Because the Reorganized Debtors believe that the actuarial assumptions and discount rate utilized in preparing their Schedules are fair, reasonable and consistent with the methodology underlying their historical financial reporting, and because the Non-Qualified

---

[4]      *See* Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 574]; Third Amended Joint Chapter 11 Plan of Reorganization of The Reader's Digest Association, Inc. and Its Debtor Affiliates [Docket No. 310].

Claimants are receiving their pro rata share of a fixed $4 million pot pursuant to the Plan (such that variations in claim amounts will not meaningfully impact recoveries), in the interest of expediting distributions to the Debtors' unsecured creditors — the majority of whom are the Non-Qualified Claimants —  the Reorganized Debtors seek to fix and allow the individual claim amounts of the Non-Qualified Claimants at the amounts set forth in the Schedules, which the Reorganized Debtors' believe represent a fair and reasonable value for each participant's claim. The Reorganized Debtors have discussed the merits of this Objection with counsel to the Claims Oversight Committee (as defined in the Plan), and the Claims Oversight Committee supports the Objection as a fair and reasonable approach to expedite distributions.

8.      Accordingly, by this Objection, the Reorganized Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) fixing and allowing each of the claims identified on Schedule 1 (each, a "***Non-Qualified Plan Claim***") by (i) utilizing the discount rate set forth in the 2009 Mercer Report and (ii) appropriately classifying each such claim as a general unsecured claim.[5]

9.      In addition, the Reorganized Debtors have discovered that certain of the obligations owing to participants in a SERP plan sponsored by a former subsidiary and non-Debtor, QSP, Inc ("***QSP***"), were transferred in connection with the sale of the QSP business in August 2008.  Because the Reorganized Debtors have no liability for claims associated with the QSP SERP obligations, by this Objection, the Reorganized Debtors also seek to expunge each of

---

[5]    Pursuant to the Order Authorizing the Debtors to File Under Seal Certain Portions of Debtors' Schedules of Assets and Liabilities [Docket No. 113], the Reorganized Debtors were authorized to file confidential information relating to employee and retiree compensation, as well as the home addresses for such individuals, under seal when filing their Schedules.  Because the Reorganized Debtors remain concerned about this confidential information being disclosed, they have excluded the addresses and claim amounts of the participants affected by this Objection from Schedules 1 and 2 to the attached **Exhibit A**.  Unredacted copies of Schedules 1 and 2 to the attached **Exhibit A** including the affected participants' addresses and claim amounts will be provided to the Court, the Office of the Untied States Trustee for the Southern District of New York (the "***U.S. Trustee***") and the Claims Oversight Committee on a confidential basis. Individuals subject to this Objection will receive a personalized form of notice identifying their affected claims.

5

the claims identified on Schedule 2 to the attached **Exhibit A** (each, a "*QSP Claim*" and, together with the Non-Qualified Plan Claims, the "*Disputed Claims*") from their claims register.[6]

### Jurisdiction

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

11.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The statutory bases for the relief requested herein are sections 105(a) and 502(b) of title 11 of the United States Code, (the "**Bankruptcy Code**") and Rule 3007 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**").

### Background

**A.     The Chapter 11 Cases**

13.     On August 24, 2009 (the "*Commencement Date*"), each of the Reorganized Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

14.     On September 24, 2009, the Reorganized Debtors filed the Schedules.

15.     By order dated October 7, 2009, the Court entered an order establishing, among other things, November 16, 2009 (the "*Claims Bar Date*") as the deadline by which proofs of claim were required to be filed in the chapter 11 cases [Docket No. 154] (the "*Claims Bar Date*

---

[6]   One of the QSP Claims included on Schedule 2 to **Exhibit A** hereto was included on the Schedules but was not the subject of a superseding proof of claim.  The Reorganized Debtors respectfully request that, to the extent necessary, this Objection also be deemed a motion to amend the Schedules to eliminate the QSP Claims.  In addition, three of the claimants listed on Schedule 2 to **Exhibit A** also hold general unsecured claims against the Debtors due to their participation in the company's Excess Benefit Retirement Plan.  As a result, the Reorganized Debtors seek to disallow only the QSP SERP portion of these claims and seek to fix and allow the portion of these individual claims related to the participants' Non-Qualified Plan Claims as general unsecured claims in the amounts identified as the "Proposed General Unsecured Amount" on Schedule 2 to **Exhibit A**.

***Order***").[7]   In accordance with the Claims Bar Date Order, written notice of the Claims Bar Date was mailed to, among others, all creditors listed on the Schedules.[8]

16.    On November 24, 2009, the Reorganized Debtors filed the Plan.  On January 19, 2010, the Court entered an order confirming the Plan [Docket No. 574].  The effective date of the Plan occurred on February 19, 2010.

17.    Pursuant to the Plan, general unsecured claims, including claims arising from the discontinuation, rejection or termination of the Non-Qualified Plans, are entitled to receive distributions of their pro rata share of a $4 million pot of cash allocable to all holders of similarly situated general unsecured claims.[9]   Based on the Reorganized Debtors' current estimates of the total general unsecured claims in Class 5 of the Plan, recoveries are expected to be approximately 3-4% of the claim amount.

18.    On February 11, 2010, the Reorganized Debtors filed a motion seeking approval of and establishing procedures for filing omnibus objections to proofs of claims filed against the Reorganized Debtors in these chapter 11 cases (the "***Claims Objection Procedures***"), which motion was granted by order dated March 9, 2010 (the "***Claims Objection Procedures Order***"). Pursuant to the Claims Objection Procedures, the Reorganized Debtors are authorized to file objections to claims that are in whole or in part inconsistent with the Reorganized Debtors' books and records on an omnibus basis.

---

[7]    The Claims Bar Date Order also established February 20, 2010 as the deadline for all governmental units to file proofs of claim in the chapter 11 cases.

[8]    Pursuant to Bankruptcy Rule 2002(f), the Reorganized Debtors also published notice of the Claims Bar Date on at least one occasion in the national editions of the *U.S.A. Today* and *The Wall Street Journal* at least 25 days prior to the Claims Bar Date.

[9]    *See* Plan at Art. III.B.5.

**B.    The Non-Qualified Plans**

19.    Prior to the Commencement Date, the Reorganized Debtors provided certain retirement benefits pursuant to the Non-Qualified Plans.[10]  The following is a brief summary of the Non-Qualified Plans and the corresponding participant information, as well as the associated projected benefit obligations/accumulated postretirement benefit obligations (collectively, the "***PBO***") based on the 2009 Mercer Report:

    a.    <u>Excess Benefit Retirement Plan</u>:  The Excess Benefit Retirement Plan provided retirement benefits on income above the annual compensation limits set forth in the tax law as well as in the qualified Retirement Plan itself.  Benefits under this plan were paid as a lump sum at retirement or as an annuity (if elected prior to 2006).  The Debtors believe approximately 115 retired participants in the Non-Qualified Plans were eligible or receiving benefits under the Excess Benefit Retirement Plan as of the Commencement Date.  There were also approximately 50 active employees eligible for this plan, none of whom have received any payments as of the Commencement Date.  The Excess Benefit Retirement Plan PBO liability represents approximately $21 million or 28% of the total liability related to the Non-Qualified Plans.  All obligations under this plan are unsecured, unfunded obligations and all benefits were paid out of general corporate assets.

    b.    <u>Executive Retirement Plan</u>:  The Executive Retirement Plan provided for enhanced retirement benefits for life and, in some cases, participants' spouse's life.  Benefits under this plan were paid monthly through payroll.  The Debtors believe approximately 16 former employees participated in this plan.  The Executive Retirement Plan represents approximately $18 million or 24% of the total PBO liability related to the Non-Qualified Plans.  All obligations under this plan are unsecured, unfunded obligations and all benefits were paid out of general corporate assets.

    c.    <u>Executive Cash Balance Plan</u>:  The Executive Cash Balance Plan provided participants with a defined contribution plan that was complementary, and in addition to, the cash balance provisions of the Retirement Plan and the Excess Retirement Plan.  Benefits under this plan were paid through payroll in ten annual installments following termination.  There were four participants in this plan.  The Executive Cash Balance Plan represents approximately $2 million or 3% of the total PBO liability related to the

---

[10]    The Non-Qualified Plans should not be confused with the Reorganized Debtors' qualified retirement plan (the "***Retirement Plan***"), which has approximately 4,800 participants (approximately 3,500 are inactive employees) and which is fully funded.  Qualified pension benefits protected under the Employee Retirement Income Security Act of 1974 and paid under the Retirement Plan are not affected by these chapter 11 cases and participants will continue to receive payments under the Retirement Plan in the ordinary course.  The Non-Qualified Plan benefits were designed to supplement and/or complement pension benefits provided under the qualified Retirement Plan.

Non-Qualified Plans. All obligations under this plan are unsecured, unfunded obligations and all benefits were paid out of general corporate assets.

d.    Supplemental Employee Retirement Plan: The SERPs were individual agreements with certain management employees that provided for supplemental retirement benefits which were funded partially by each participant and by the Debtors. Benefits under this plan were paid annually over a 15-year term with such term commencing when the participant turned 65 years old (or 55 with a 3% per year reduction factor). Generally, by the second annual payment, the participant had received more in benefits than he/she paid into the plan, without taking into account the tax savings and time value of money implicit in the initial contributions. There were 75 retired and three active participants with balances due under the SERPs as of the Commencement Date. In addition, there were twelve individuals who have not yet commenced payments under their SERP, including two active employees. The SERP liability represents approximately $23 million or 30% of the total PBO liability related to the Non-Qualified Plans. All obligations under this plan are unsecured, unfunded obligations and all benefits were paid out of general corporate assets.[11]

e.    Deferred Compensation Plan:[12] The Deferred Compensation Plan permitted participants to defer current income or bonus for retirement and tax planning. Benefits under this plan were paid annually according to elections made by the participants. There were 20 participants who have approximately $3.6 million in this plan. Together with the $3.9 million liability associated with two Direct Holdings deferred compensation arrangements, these plans represent approximately 10% of the total PBO liability associated with the Non-Qualified Plans. All obligations under this plan are unsecured, unfunded obligations and all benefits were paid out of general corporate assets.

f.    Direct & Roving Editor Arrangements: There is no actual "plan" associated with the "Direct and Roving Editors Plan." In large part, it is the aggregate of individual agreements for monthly or annual retirement payments to certain individuals, including certain writers, editors and researchers who generated stories for the flagship magazine.[13] There are

---

[11]    As set forth in the Williams Declaration, when SERP programs similar to the Debtors were implemented, companies often used corporate-owned life insurance ("**COLI**") as a "hedge" against the cost of the program. Generally, companies expected the long-term returns from the policies would recover the cost of the program over the life expectancy of the insured. Some of the Disputed Claims filed by SERP participants suggest there may be recourse to the COLI policies for certain SERP arrangements. All COLI policies purchased in connection with the SERP, however, were for the benefit of the corporation and were recorded on the books as assets of Reader's Digest. *See* Williams Decl. at ¶ 77.

[12]    In addition to The Reader's Digest Association Inc. Deferred Compensation Plan described here, reorganized debtor Direct Holdings U.S. Corp. has legacy individual deferred compensation arrangements with two individuals who were never employees of any of the Reorganized Debtors in the chapter 11 cases. Obligations related to those arrangements are estimated to be $3.9 million.

[13]    Claims under this "plan" also include those held by nine former directors who had been receiving pensions of $32,000 per year.

approximately 55 individual participants in these arrangements. The Direct and Roving Editors arrangements represent approximately $5.4 million, or 7%, of the total non-qualified liability. All of these non-qualified promises were unsecured, with payments made directly by the company out of general corporate assets.

## C.    The Schedules and Non-Qualified Plan Claims

20.    As described above, in preparing the Schedules, the Reorganized Debtors engaged their actuary, Mercer. As the Reorganized Debtors' actuary, Mercer has historically prepared a bi-annual actuarial valuation report of the assets and liabilities associated with the Reorganized Debtors' Non-Qualified Plans to provide reporting and disclosure information for financial statements, governmental agencies and other interested parties.

21.    To calculate the present value of the individual participants' claims arising from the termination of the Non-Qualified Plans for the Schedules, Mercer applied the same discount rate and assumptions to determine the probability of future payments as the Reorganized Debtors used to report their benefit obligations in their June 30, 2009 balance sheet. Specifically, the 6.50% discount rate selected by the Reorganized Debtors is based on the interest rate of AA corporate bonds as of June 30, 2009. That discount rate satisfies Statement of Financial Accounting Standards No. 87, which provides guidance that the discount rate selected should be based on high–quality fixed income investments currently available and expected to be available during the period to maturity of the pension benefits.

22.    Because future payments are unknown, Mercer used standard actuarial assumptions to place a probability that future payments would be made, and the mortality table selected was based on a table published by the Society of Actuaries referred to as the RP-2000 mortality table, with a seven–year projection of mortality improvements. For benefits paid in the form of an annuity, Mercer calculated the present value as if the participant and its beneficiary, if applicable, would be alive.

23.    On or before the Claims Bar Date, a number of participants in the Non-Qualified Plans filed proofs of claim challenging both the amount and classification of their claims arising from the termination of the Non-Qualified Plans.  In several cases, the Non-Qualified Plan Claimants arrive at a different claim amount based on the use of different actuarial assumptions and discount rates.

**D.    The QSP Sale and the QSP Claims**

24.    Prior to the Commencement Date, the Reorganized Debtors' non-Debtor affiliate, QSP, along with its subsidiaries in the United States and Canada, operated the company's schools and youth fundraising division.

25.    Certain of QSP's employees (approximately 12) were participants in the SERP. Originally, Reader's Digest was the obligor under each of the SERPs, including those for the benefit of QSP employees.  In 1989, however, on the advice of outside counsel, Reader's Digest assigned the obligations under all of the SERPs for the benefit of the QSP employees to QSP and QSP assumed the same.[14]

26.    On or about August 22, 2008, approximately one-year prior to the Commencement Date, the Reorganized Debtors sold QSP, Quality Service Programs, Inc. and their affiliated subsidiaries in the United States and Canada to subsidiaries of Time Inc. (the "***Purchaser***") for a purchase price of $110.0 million, subject to certain closing balance sheet adjustments, pursuant to a stock purchase agreement (the "***Purchase Agreement***").  Under the Purchase Agreement, all of QSP's liabilities, including, without limitation, the obligations associated with the QSP SERPs, remained with QSP.

---

[14]    The Reorganized Debtors will provide the documentation evidencing the assignment and assumption of these SERPs on a confidential basis to the Court, the U.S. Trustee and the Claims Oversight Committee.

27.     At the outset of these chapter 11 cases, the Reorganized Debtors believed all of the SERP liabilities, including the QSP SERPs, resided at the parent company level. Accordingly, in preparing their Schedules, the Reorganized Debtors scheduled the QSP SERPs as a liability of Reader's Digest. However, during the course of the chapter 11 cases, the Reorganized Debtors determined that obligations to the seven remaining QSP employees with outstanding SERP payments due are not liabilities of Reader's Digest or any of the Reorganized Debtors.

### **Relief Requested**

28.     By this Objection and pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, as part of the claims reconciliation process and in the interest of expediting distributions to general unsecured creditors, the Reorganized Debtors respectfully request that the Court entered an order, substantially in the form attached hereto as **Exhibit A**, (a) fixing the Non-Qualified Plan Claims by (i) using the discount rate set forth in the 2009 Mercer Report and (ii) reclassifying all of the Non-Qualified Plan Claims as general unsecured claims and (b) expunging the QSP Claims from the claims register.

### **Basis for Relief**

29.     The Reorganized Debtors are authorized to object to the Disputed Claims. Pursuant to section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest objects thereto. *See* 11 U.S.C. §502(a); *see also id.* §1111(a) ("A proof of claim . . . is deemed filed under section 501 of this title for any claim . . . that appears in the schedules . . . except a claim . . . that is scheduled as disputed, contingent, or unliquidated.").

30.     Bankruptcy Rule 3007(d) permits a debtor to file an omnibus objection to claims when the basis for the objection is that the claims are subject to objection based on the following procedural grounds:  (a) they duplicate other claims; (b) they have been filed in the wrong case;

(c) they have been amended by subsequently filed proofs of claim; (d) they were not timely filed; (e) they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (f) they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (g) they are interests, rather than claims; or (h) they assert priority in an amount that exceeds the maximum amount under section 507 of the Code. *See* FED. R. BANKR. P. 3007(d) (emphasis added). In addition, as described above, the Claims Objection Procedures, which have been approved by the Court, authorize the Reorganized Debtors to file omnibus objections to claims related to the Reorganized Debtors' books and records.

31. Moreover, the Reorganized Debtors believe that filing the Objection at this time and in an omnibus fashion will facilitate an expeditious and efficient reconciliation of the Disputed Claims and is in the best interests of their estates and the participants in the Non-Qualified Plans. First, the Disputed Claims all feature similar issues, including, without limitation, the discount rate to be utilized in calculating the present value of each participant's non-qualified benefit claim. Second, because the Disputed Claims contain similar issues, allowing the Disputed Claims to be heard in an omnibus fashion will reduce unnecessary expense and effort by the Reorganized Debtors, the participants in the Non-Qualified Plans and this Court, while at the same time affording these participants with transparency and clarity with respect to the Disputed Claims. Third, the Reorganized Debtors are filing the Objection at this time to expedite distributions to the participants in the Non-Qualified Plans. If the Reorganized Debtors were forced to adjudicate individual pleadings for each Disputed Claim, distributions to the participants in the Non-Qualified Plans could be significantly delayed.

I.      **The Non-Qualified Plan Claims Should Be (a) Fixed By Using the Discount Rate Set Forth In the 2009 Mercer Report and (b) Reclassified As General Unsecured Claims.**

32.     The Reorganized Debtors believe that the actuarial assumptions and discount rates utilized in preparing the Schedules are fair, reasonable and consistent with the methodology underlying their historical financial reporting.

33.     The 6.50% discount rate selected by the Reorganized Debtors is based on the interest rate of AA corporate bonds as of June 30, 2009, the time of their most recent financial statements and immediately prior to the Commencement Date, which is when such claims should be valued.  *See* 11 U.S.C. § 502(b); *see also Ogle v. Fidelity & Deposit Co. of Maryland*, 586 F.3d 143, 146 (2d Cir. 2009) (noting that the amount of a claim shall be determined as of the date of the commencement of the case under section 502(b) of the Bankruptcy Code).   The Reorganized Debtors' use of such discount rate satisfies Statement of Financial Accounting Standards No. 87, which provides guidance that the discount rate selected should be based on high–quality fixed income investments currently available and expected to be available during the period to maturity of the pension benefits.  Although benefit maturities vary, it would be impractical and potentially unfair for the Reorganized Debtors' to use anything other than a blended discount rate to present value the claims for the entire pool of Non-Qualified Claimants.  Indeed, any investment by the company to hedge against, or finance, the liabilities under the Non-Qualified Plans would be made on a pooled basis with reference to expected payouts to all participants over the life of the investment and an applicable yield curve.  Where, as here, the pool of claimants are receiving distributions from a fixed amount of dollars (such that increased claim amounts for individual participants directly reduces recoveries to all), and given that by their very nature the Non-Qualified Plan Claims generally cannot be present-valued with infallible accuracy, there is little to no harm in applying a consistent interest rate across the board

14

and reconciling the claim amounts to those set forth in the Schedules in order to expedite distributions.

34.     Moreover, because all of the obligations under the Non-Qualified Plans are unsecured, unfunded obligations, and all benefits thereunder were paid out of general corporate assets, all claims arising from the terminated Non-Qualified Retirement Plans are general unsecured claims and should be reclassified as such.

35.     Accordingly, in the interest of expediting payments to the group of Non-Qualified Claimants and to maintain consistency with the methodology underlying the Reorganized Debtors' historical financial reporting and anticipated postretirement benefit obligations, the Reorganized Debtors seek to fix and allow the Non-Qualified Plan Claims as general unsecured claims in the amounts identified as the "Proposed General Unsecured Amount" on <u>Schedule 1</u> to **<u>Exhibit A</u>**.

## II.     The Reorganized Debtors Have No Liability On Account Of the QSP SERPs.

36.     As described above, certain of the scheduled claims related to the Non-Qualified Plans are actually SERP obligations of QSP.  Although the Reorganized Debtors originally believed all of the SERP liabilities resided at Reader's Digest, during the course of the chapter 11 cases, the Reorganized Debtors determined through diligence and correspondence provided by such claimants that the SERP obligations for seven of the Non-Qualified Plan Claimants were assigned to QSP prior to the Commencement Date.  Because such obligations remain the liability of QSP, a non-Debtor entity no longer owned by the Reorganized Debtors, these obligations do not reflect a liability of the Reorganized Debtors.[15]

---

[15]     The Purchaser, also a general unsecured creditor in Class 5, has also filed a proof of claim in these chapter 11 cases in an unliquidated amount on account of asserted indemnification obligations of the Reorganized Debtors related to the 2008 sale.  Accordingly, the Reorganized Debtors do not believe the total Class 5 Claims will be reduced by the QSP Claims proposed to be expunged because those amounts are likely to be asserted by the Purchaser as part of its Class 5 Claim.  The Reorganized Debtors reserve all rights to require that the QSP Claims also be valued in a manner consistent with the methodology used in the Schedules for purposes of quantifying the indemnification claims of the Purchaser to the extent necessary.

37.     Accordingly, by this Objection, the Reorganized Debtors seek to expunge the QSP Claims listed on <u>Schedule 2</u> to **<u>Exhibit A</u>** from the claims register.

### <u>Reservation of Rights</u>

38.     This Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the right of the Reorganized Debtors or any other party in interest to object to any of the Disputed Claims affected hereby on any other ground whatsoever, and the Reorganized Debtors expressly reserve all further substantive and/or procedural objections they may have.

### <u>Separate Contested Matters</u>

39.     Pursuant to the Claims Objection Procedures Order and Bankruptcy Rule 9014, each claim objection as to which the claimant timely and properly responds shall constitute a separate contested matter.  Any order entered by the Court with respect to an objection shall be deemed a separate order with respect to each proof of claim.

### <u>Notice</u>

40.     The Reorganized Debtors have served notice of this Objection on (a) the U.S. Trustee, (b) counsel to the Claims Oversight Committee, (c) each party identified on <u>Schedule 1</u> and <u>Schedule 2</u> to the attached **<u>Exhibit A</u>** and (d) any persons who have filed a request for notice in these chapter 11 cases after the effective date of the Plan.  Due to the nature of the relief requested herein, the Reorganized Debtors respectfully submit that no other or further notice of this Objection is required or necessary.

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an order (a) fixing the Non-Qualified Plan Claims on <u>Schedule 1</u> to **<u>Exhibit A</u>** to be consistent with the Reorganized Debtors' Schedules, (b) expunging the QSP Claims on <u>Schedule 2</u> to **<u>Exhibit A</u>** and (c) granting such other and further relief as is just and proper.

Dated:  April 30, 2010
      New York, New York

/s/ *Nicole L. Greenblatt*

James H.M. Sprayregen P.C.
Paul M. Basta
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

Counsel to the Reorganized Debtors

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE READER'S DIGEST ASSOCIATION, | ) | Case No. 09-23529 (RDD) |
| INC., *et al.*, | ) | |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER RECONCILING CERTAIN BOOKS AND
## RECORDS CLAIMS RELATED TO THE NON-QUALIFIED PLANS

Upon the Reorganized Debtors' Fifth Omnibus Objection to Certain Books and Records Claims Related to the Non-Qualified Plans (the "***Objection***")[1] of The Reader's Digest Association and certain of its affiliates (collectively, the "***Reorganized Debtors***")[2] pursuant to sections 105(a) and 502(b) of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"); and the Court having jurisdiction to consider the Objection and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this court pursuant to 28 U.S.C. § 1408; and upon the record of the Objection at a hearing held before the

---

[1]    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Objection.

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, Inc. (1192); Reiman Media Group, Inc. (8760); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (1189); WRC Media, Inc. (6536). The location of the Reorganized Debtors' corporate headquarters is: 1 Reader's Digest Road, Pleasantville, NY 10570.

Court on June 18, 2010 (the "**_Hearing_**"); and the Court having determined that the Objection is in the best interest of the Reorganized Debtors, their estates and creditors and all other parties in interest in these chapter 11 cases; and notice of the Objection appearing adequate and appropriate under the circumstances; and the Court having found that no other further notice need be provided; and any objections to the Objection having been resolved, withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED THAT:

1.      Pursuant to section 502 of the Bankruptcy Code, each of the Non-Qualified Plan Claims is hereby fixed and allowed as a general unsecured claim in the amount set forth in the "Proposed General Unsecured Amount" reflected on **Schedule 1**.

2.      Each of the QSP Claims listed on **Schedule 2** is disallowed and expunged, and the Schedules deemed so amended, pursuant to section 502(b) of the Bankruptcy Code.

3.      Each Disputed Claim and the objections by the Reorganized Debtors to each Disputed Claim as addressed in the Objection and as set forth on **Schedule**s **1** and **2** attached hereto constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014.  This Order shall be deemed a separate order with respect to each Disputed Claim.  Any stay of this Order shall apply only to the contested matter which involves such creditor and shall not act to stay the applicability or finality of this Order with respect to the other contested matters covered hereby.

4.      The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Objection.

5.      The terms, conditions and provisions of this Order shall be immediately effective and enforceable upon entry of this Order.

8.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.


Date: _____, 2010
White Plains, New York                          _____
                                                United States Bankruptcy Judge

## **Schedule 1**

**Schedule of Non-Qualified Plan Claims**

| Name | Claim Number | Date Filed | Basis | Debtor |
|------|------|------|------|------|
| ADAMS JAMES F  JR | 628 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| ALLEN NINA BELL | 944 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BARNETT CHARLES E | 712 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BARRY THOMAS D | 846 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BATTISTELLO GREGORY | 765 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BECK CONNIE K | 583 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BERNSTEIN NAOMI | 513 | 11/9/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BESTERIO ELBA | 462 | 11/5/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BISCHOFF ROBERT N | 1031 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BOHANE JOHN M | 638 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BOHANE LINDA BRINTON | 842 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BRANSON ROBERT | 328 | 10/27/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BROPHY THEODORE F | 865 | 10/7/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BROWN CAROLE | 769 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| BURKART BRIAN K | 1197 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| CANNONE CHARLES F | 938 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| COLE RONALD | 687 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| COLEMAN GREGORY G | 1013 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| DALY THOMAS J | 347 | 10/28/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| DAVENPORT PETER | 588 | 11/9/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| ELLIOTT LAWRENCE | 564 | 11/9/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| FARQUHAR MARTHA C | 1068 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| FEIGENBAUM JOEL | 151 | 9/28/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| GELINAS JEANMARIE | 1149 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |

| Name | Claim Number | Date Filed | Basis | Debtor |
|---|---|---|---|---|
| GEORGE JEAN C | 864 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| GILLETT III E KENDALL | 957 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| GORDON KENNETH A H | 567 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| GRAY GLENN R | 202 | 10/19/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| GRECKY JOSEPH M | 781 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| GRUNE GEORGE V | 754 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| HANSON HUBERT P | 494 | 11/6/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| HOCHBERG DAVID C | 1241 | 11/16/2009 | Non-Qualified Retirement Plan | Direct Holdings U.S. Corp. |
| HOCHBERG FRED P | 958 | 11/16/2009 | Non-Qualified Retirement Plan | Direct Holdings U.S. Corp. |
| HOWARD CAROLE M | 435 | 11/3/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| HUBBELL JOHN | 939 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| JONES ROSS | 680 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| KENNEY THOMAS M | 548 | 11/11/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| KENNY PATRICK | 1042 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| KIM CHARLES | 1187 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| KNOX MARY KATHLEEN | 719 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| KOLSBY EDWIN B | 169 | 10/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| LAIRD MELVIN R | 276 | 10/23/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| LAW DONALD CALVIN | 658 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| LEFKOWITZ MARCIA | 806 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| LIEBMAN BARRY M | 686 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| MORGAN BARBARA J | 325 | 10/27/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| PERSONENI JANE R | 966 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |

| Name | Claim Number | Date Filed | Basis | Debtor |
|---|---|---|---|---|
| POLLEY JANE | 1014 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| REED IRENE | 1325 | 11/18/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| RICH GARY S | 563 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| RUGGIERO ANTHONY W | 654 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| RYDER THOMAS O | 858 | 11/9/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| SCHADT JAMES P | 248 | 10/21/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| SCHELL FRANCIS J | 585 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| SCHULZ WILLIAM | 965 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| SCHWARTZ ROBERT G | 568 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| SHIPLEY WALTER V | 642 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| THOMPSON EDWARD T | 1307 | 11/17/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| WECKER RITA AND STANLEY | 584 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| WILDMAN MARK | 639 | 11/10/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |

## __Schedule 2__

**Schedule of QSP Claims**

| Name | Claim Number | Date Filed | Basis | Debtor |
|------|------|------|------|------|
| BELLI, THOMAS A | 531 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| CASEY, HERBERT | 682 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| DANIELLO, JEAN | 509 | 11/12/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| FITZGERALD, KARL RICHARD | 962 | 11/16/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| HANNA, GEORGE ARTHUR | 1298 | 11/17/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| HORN, HERB | N/A | N/A | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |
| STATHEM, DAVID C | 726 | 11/13/2009 | Non-Qualified Retirement Plan | The Reader's Digest Association, Inc. |

## Exhibit B

**2009 Mercer Report**

August 7, 2009

# Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009

## The Reader's Digest Association, Inc. U.S. Pension and Postretirement Benefit Plans

# MERCER



MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

**Consulting. Outsourcing. Investments.**

# Contents

**1.** Introduction.................................................................................................................1

**2.** Certification ...............................................................................................................2

**3.** Information for Disclosure .........................................................................................5

**4.** Assets .....................................................................................................................14

**5.** Development of Expense..........................................................................................16

**6.** Participant Data .......................................................................................................18

**7.** Actuarial Basis.........................................................................................................19



**1**

# Introduction

## Accounting

Mercer has prepared this actuarial valuation report for Reader's Digest Association, Inc. and its auditors to provide reporting and disclosure information for financial statements, governmental agencies and other interested parties, pursuant to Financial Accounting Standards Board ("FASB") Nos. 87, 88, 106, 132(R) and 158 for the Reader's Digest Association, Inc. US Pension and Postretirement Benefit Plans. Applicable income tax effects under FAS 109 are **not** shown in this report.

The total net periodic pension cost (NPPC), including the curtailment credit and special termination benefit charge, calculated in accordance with FASB Statements Nos. 87, 88 and 106, is as follows:

|  | Expense/(Income) for Fiscal Year Ending | |
|---|---|---|
|  | **June 30, 2009** | **June 30, 2008** |
| Retirement Plan | $ (31,577,514) | $ (25,158,936) |
| Nonqualified Pension Plans (Total) | 4,682,611 | 5,354,995 |
| Total U.S. Pension Plans | (26,894,903) | (19,803,941) |
| Postretirement Welfare Plan | (9,690,205) | 3,208,253 |
| Total U.S. | $ (36,585,108) | $ (16,595,688) |

**2**

# Certification

We have prepared an actuarial valuation of The Reader's Digest Association, Inc. U.S. Pension and Postretirement Benefit Plans for the fiscal years ending June 30, 2008 and June 30, 2009. The results of the valuation are set forth in this report, which reflects the provisions of the plans as amended and effective through June 30, 2009.

This valuation report may not be relied upon for any other purpose or by any party other than The Reader's Digest Association, Inc. and its auditors. Mercer is not responsible for the consequences of any other use. A valuation report is a snapshot of a plan's estimated financial condition at a particular point in time; it does not predict a pension plan's future financial condition or its ability to pay benefits in the future.

Over time, a plan's total cost will depend on a number of factors, including the amount of benefits it pays, the number of people paid benefits and the amount earned on any assets invested to pay the benefits. These amounts and others are uncertain and unknowable at the valuation date, but are predicted to fall within a reasonable range of possibilities.

To prepare this report, *actuarial assumptions*, as described in Section 7 are used to select a single scenario from the range of possibilities. The results of that single scenario are included in this report. However, the future is uncertain and the plan's actual experience will differ from those assumptions; these differences may be significant or material. In addition, different assumptions or scenarios may also be within the reasonable range and results based on those assumptions would be different. Actuarial assumptions may also be changed from one valuation to the next because of mandated requirements, plan experience, changes in expectations about the future and other factors.

Because actual plan experience will differ from the assumptions, decisions about benefit changes, investment policy, funding amounts, benefit security and/or benefit related issues should be made only after careful consideration of alternative future financial conditions and scenarios, and not solely on the basis of a valuation report or reports.

The Reader's Digest Association, Inc.

## Data

To prepare this report, Mercer has used and relied upon financial data submitted by the trustee without further audit. We have also used and relied upon participant data supplied by the plan sponsor; this data would customarily not be verified by a plan's actuary. We have reviewed the participant data for internal consistency and reasonableness and have no reason to doubt its substantial accuracy. Finally, we have also used and relied upon the plan documents, including amendments, supplied by the plan sponsor. The plan sponsor is solely responsible for the validity and completeness of this information.

## Accounting results

The valuation of the plan was performed in accordance with generally accepted actuarial principles and procedures. The accounting calculations reported herein are consistent with our understanding of The Reader's Digest Association, Inc.'s interpretation of the provisions of FAS Nos. 87, 88, 106, 132(R) and 158. The actuarial assumptions were selected by the company. We believe that each of these assumptions is reasonable.

**Mercer**

3

## Professional qualifications

We are available to answer any questions on the material contained in the report, or to provide explanations or further details as may be appropriate. The undersigned credentialed actuaries meet the Qualification Standards of the American Academy of Actuaries to render the actuarial opinion contained in this report. We are not aware of any direct or material indirect financial interest or relationship, including investments or other services that could create a conflict of interest, that would impair the objectivity of our work.

| | | | |
|---|---|---|---|
| _Kevin A. Gontowski_ | 8/7/2009 | _Daniel J. Kunetz_ | 8/7/2009 |
| **Kevin A. Gontowski, FSA, MAAA**<br>**Long-Term Aspect** | **Date** | **Daniel J. Kunetz, FSA, MAAA**<br>**Long-Term and Health Care Aspect** | **Date** |

I have reviewed and found acceptable the actuarial assumptions, methods and procedures used in this valuation.

| | | | |
|---|---|---|---|
| _Edward F. Card_ | 8/7/2009 | _Elizabeth A. Hanson_ | 8/7/2009 |
| **Edward F. Card, FSA, MAAA**<br>**Long-Term Aspect** | **Date** | **Elizabeth A. Hanson, FSA, MAAA**<br>**Health Care Aspect** | **Date** |

Mercer
601 Merritt 7
Norwalk, CT 06856

203 229 6000

**The information contained in this document (including any attachments) is not intended by Mercer to be used, and it cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code that may be imposed on the taxpayer.**

**Actuarial Valuation Report for the Fiscal Years
Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

**3**

# Information for Disclosure – Fiscal Year Ending June 30, 2009

**Country**

**Plan name**
**CURRENT FISCAL YEAR IN US DOLLARS**
Fiscal year ending on

| | US Ret Plan | US Excess Plan | ERP | US Exec Cash Bal | US SERP(all) | US Direct & Rev Ed | US Total Non-Funded | US Total Pension | US Retiree Medical | **Total** |
|---|---|---|---|---|---|---|---|---|---|---|
| | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 |
| **A. Change in benefit obligation** | | | | | | | | | | |
| 1. Benefit obligation at beginning of year | 413,472,828 | 21,641,015 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,959,205 | 485,432,033 | 25,555,775 | 510,987,808 |
| 2. Service cost | 3,363,751 | 94,707 | - | - | 134,586 | - | 229,293 | 3,593,044 | 18,977 | 3,612,021 |
| 3. Interest cost | 26,531,797 | 1,362,050 | 1,161,308 | 157,486 | 1,532,163 | 311,521 | 4,524,528 | 31,056,325 | 1,604,040 | 32,660,365 |
| 4. Participant contributions | - | - | - | - | - | - | - | - | - | - |
| 5. Plan amendments | - | - | - | - | - | - | - | - | - | - |
| 6. Actuarial (gain) or loss | 6,114,794 | 331,554 | 518,836 | (277,995) | 711,402 | 283,689 | 1,567,486 | 7,682,280 | (6,360,532) | 1,321,748 |
| 7. Benefits paid | (44,033,684) | (2,652,887) | (1,522,680) | (255,186) | (3,538,045) | (942,282) | (8,911,080) | (52,944,764) | (3,681,298) | (56,626,062) |
| 8. Acquisitions and mergers | - | - | - | - | - | - | - | - | - | - |
| 9. Divestitures and spinoffs | - | - | - | - | - | - | - | - | - | - |
| 10. Transfers | - | - | - | - | - | - | - | - | - | - |
| 11. Plan curtailments | (2,242,082) | | | | | | - | (2,242,082) | 1,286,372 | (955,710) |
| 12. Plan settlements | - | - | - | - | - | - | - | - | - | - |
| 13. Special termination benefits | 3,098,201 | | | | | | - | 3,098,201 | | 3,098,201 |
| 14. Expenses, taxes and premiums paid | - | - | - | - | - | - | - | - | - | - |
| 15. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 16. Benefit obligation at end of year | 406,305,605 | 20,776,439 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,369,432 | 475,675,037 | 18,423,334 | 494,098,371 |
| **B. Change in plan assets** | | | | | | | | | | |
| 1. Fair value of plan assets at beginning of year | 671,003,164 | | | | | | | 671,003,164 | | 671,003,164 |
| 2. Actual return on plan assets | (117,182,234) | | | | | | | (117,182,234) | | (117,182,234) |
| 3. Employer contributions | | 2,662,887 | 1,522,680 | 255,186 | 3,538,045 | 942,282 | 8,911,080 | 8,911,080 | 3,681,298 | 12,592,378 |
| 4. Participant contributions | - | - | - | - | - | - | - | - | - | - |
| 5. Acquisitions and mergers | - | - | - | - | - | - | - | - | - | - |
| 6. Divestitures and spinoffs | - | - | - | - | - | - | - | - | - | - |
| 7. Transfers | - | - | - | - | - | - | - | - | - | - |
| 8. Plan settlements | - | - | - | - | - | - | - | - | - | - |
| 9. Benefits paid | (44,033,684) | (2,652,887) | (1,522,680) | (255,186) | (3,538,045) | (942,282) | (8,911,080) | (52,944,764) | (3,681,298) | (56,626,062) |
| 10. Expenses, taxes and premiums paid | - | - | - | - | - | - | - | - | - | - |
| 11. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 12. Fair value of plan assets at end of year | 509,787,246 | | | | | | | 509,787,246 | | 509,787,246 |
| **C. Reconciliation of funded status** | | | | | | | | | | |
| 1. Fair value of plan assets at end of year | 509,787,246 | | | | | | | 509,787,246 | | 509,787,246 |
| 2. Benefit Obligation at end of year | 406,305,605 | 20,776,439 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,369,432 | 475,675,037 | 18,423,334 | 494,098,371 |
| 3. Funded Status | 103,481,641 | (20,776,439) | (18,174,527) | (2,119,932) | (23,488,810) | (4,809,724) | (69,369,432) | 34,112,209 | (18,423,334) | 15,688,875 |
| 4. Net amount recognized in statement of financial position | 103,481,641 | (20,776,439) | (18,174,527) | (2,119,932) | (23,488,810) | (4,809,724) | (69,369,432) | 34,112,209 | (18,423,334) | 15,688,875 |

Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2009 (continued)

| Country | US | US | US | US | US | US | US | US | US | US |
|---|---|---|---|---|---|---|---|---|---|---|
| **Plan name** | Ret Plan | Excess Plan | ERP | Exec. Cash Bal | SERP(all) | Direct & Rov.Ed | Total Non-Funded | Total Pension | Retiree Medical | **Total** |
| **CURRENT FISCAL YEAR IN US DOLLARS** Fiscal year ending | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 |
| **D. Amounts recognized in the statement of financial position consist of:** | | | | | | | | | | |
| 1. Noncurrent assets | 103,481,641 | – | – | – | – | – | – | 103,481,641 | – | 103,481,641 |
| 2. Current liabilities | – | (2,500,000) | (1,500,000) | (270,000) | (3,760,000) | (699,000) | (8,729,000) | (8,729,000) | (4,293,000) | (13,022,000) |
| 3. Noncurrent liabilities | – | (18,276,439) | (16,674,527) | (1,849,932) | (19,728,810) | (4,110,724) | (60,640,432) | (60,640,432) | (14,130,334) | (74,770,766) |
| 4. Net amount recognized in statement of financial position | 103,481,641 | (20,776,439) | (18,174,527) | (2,119,932) | (23,488,810) | (4,809,724) | (69,369,432) | 34,112,209 | (18,423,334) | 15,688,875 |
| **E. Amounts recognized in accumulated other comprehensive income consist of:** | | | | | | | | | | |
| 1. Initial net asset (obligation) | – | – | – | – | – | – | – | – | 12,301,802 | 12,301,802 |
| 2. Prior service credit (cost) | – | – | – | – | – | – | – | – | – | – |
| 3. Net gain (loss) | (130,037,079) | (23,285,316) | (19,856,628) | (2,682,521) | (25,010,645) | (3,614,775) | (74,449,885) | (204,486,964) | 19,433,195 | (185,553,769) |
| 4. Accumulated other comprehensive income (loss) | (130,037,079) | (23,285,316) | (19,856,628) | (2,682,521) | (25,010,645) | (3,614,775) | (74,449,885) | (204,486,964) | 31,734,997 | (172,751,967) |
| 5. Prepaid (unfunded accrued) pension [or postretirement benefit] cost | 233,518,720 | 2,508,877 | 1,682,101 | 562,589 | 1,521,835 | (1,194,949) | 5,080,453 | 238,599,173 | (50,158,331) | 188,440,842 |
| 6. Net amount recognized in statement of financial position | 103,481,641 | (20,776,439) | (18,174,527) | (2,119,932) | (23,488,810) | (4,809,724) | (69,369,432) | 34,112,209 | (18,423,334) | 15,688,875 |
| **F. Components of net periodic benefit cost** | | | | | | | | | | |
| 1. Service Cost | 3,363,751 | 94,707 | – | – | 134,586 | – | 229,293 | 3,593,044 | 18,977 | 3,612,021 |
| 2. Interest Cost | 26,531,797 | 1,362,050 | 1,161,308 | 157,486 | 1,532,163 | 311,521 | 4,524,528 | 31,056,325 | 1,604,040 | 32,660,365 |
| 3. Expected Return on Assets | (61,234,148) | – | – | – | – | – | – | (61,234,148) | – | (61,234,148) |
| 4. Amortization of Initial Net (Asset)/Obligation | – | – | – | – | – | – | – | – | (7,870,608) | (7,870,608) |
| 5. Amortization of Prior Service Cost (Credit) | (58,239) | (137) | – | – | – | – | (137) | (58,376) | (1,924,860) | (1,983,236) |
| 6. Amortization of Net Actuarial (Gain)/Loss | (3,278,876) | (79,103) | (24,843) | (4,246) | – | 44,850 | (63,342) | (3,342,218) | (1,517,754) | (4,859,972) |
| 7. SFAS 88 (Gain)/Loss due to Curtailments | – | (7,731) | – | – | – | – | (7,731) | (7,731) | – | (7,731) |
| 8. SFAS 88 (Gain)/Loss due to Settlements | – | – | – | – | – | – | – | – | – | – |
| 9. Cost for Special Termination Benefits | 3,098,201 | – | – | – | – | – | – | 3,098,201 | – | 3,098,201 |
| 10. Total Periodic Benefit Cost Recognition | (31,577,514) | 1,369,786 | 1,136,465 | 153,240 | 1,666,749 | 356,371 | 4,682,611 | (26,894,903) | (9,690,205) | (36,585,108) |
| **G. Changes recognized in other comprehensive income** | | | | | | | | | | |
| 1. Transition obligation during the year | – | – | – | – | – | – | – | – | – | – |
| 2. Prior service cost (credit) arising during the year | – | – | – | – | – | – | – | – | – | – |
| 3. Net loss (gain) arising during the year | 184,531,176 | 331,554 | 518,836 | (277,995) | 711,402 | 283,689 | 1,567,486 | 186,098,662 | (6,360,532) | 179,738,130 |
| 4. Amortization of Transition Obligation | – | – | – | – | – | – | – | – | 7,870,608 | 7,870,608 |
| 5. Amortization of Prior Service (Cost) Credit | 58,239 | 137 | – | – | – | – | 137 | 58,376 | 1,924,860 | 1,983,236 |
| 6. Amortization of Net (Loss) Gain | 3,278,876 | 79,103 | 24,843 | 4,246 | – | (44,850) | 63,342 | 3,342,218 | 1,517,754 | 4,859,972 |
| 7. Impact of curtailments/ settlements | (2,242,082) | 7,731 | – | – | – | – | 7,731 | (2,234,351) | 1,286,372 | (947,979) |
| 8. Adjustments | – | – | – | – | – | – | – | – | – | – |
| 9. Exchange rate adjustment | – | – | – | – | – | – | – | – | – | – |
| 10. Total recognized in other comprehensive loss (income) | 185,626,209 | 418,525 | 543,679 | (273,749) | 711,402 | 238,839 | 1,638,696 | 187,264,905 | 6,239,062 | 193,503,967 |
| 11. Total recognized in net periodic benefit and other comprehensive loss (income) | 154,048,695 | 1,788,311 | 1,680,144 | (120,509) | 2,378,151 | 595,210 | 6,321,307 | 160,370,002 | (3,451,143) | 156,918,859 |

*Estimated amounts that will be amortized from accumulated other comprehensive income over the next fiscal year*

| | Ret Plan | Excess Plan | ERP | Exec. Cash Bal | SERP(all) | Direct & Rov.Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Initial net asset (obligation) | – | – | – | – | – | – | – | – | 1,757,400 | 1,757,400 |
| 2. Prior service credit (cost) | – | 44,780 | – | 42,496 | – | (77,103) | 10,173 | 10,173 | 1,847,780 | 1,857,953 |
| 3. Net gain (loss) | – | – | – | – | – | – | – | – | – | – |

**Mercer**

6

**Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2009 (continued)

| | Red Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rev Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Country** | US | US | US | US | US | US | US | US | US | US |
| **Plan name** | | | | | | | | | | |
| **CURRENT FISCAL YEAR IN US DOLLARS** | | | | | | | | | | |
| Fiscal year ending on | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 |
| **H. Accumulated Benefit Obligation** | 403,397,529 | 20,704,402 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,297,395 | 472,694,924 | N/A | |
| **I. Additional year-end information for plans with accumulated benefit obligations in excess of plan assets:** | | | | | | | | | | |
| 1. Projected benefit obligation | - | 20,776,439 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,369,432 | 69,369,432 | N/A | |
| 2. Accumulated benefit obligation | - | 20,704,402 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,297,395 | 69,297,395 | N/A | |
| 3. Fair value of plan assets | - | - | - | - | - | - | - | - | N/A | |
| **J. Additional year-end information for plans with projected benefit obligations in excess of plan assets:** | | | | | | | | | | |
| 1. Projected benefit obligation | - | 20,776,439 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,369,432 | 69,369,432 | N/A | |
| 2. Accumulated benefit obligation | - | 20,704,402 | 18,174,527 | 2,119,932 | 23,488,810 | 4,809,724 | 69,297,395 | 69,297,395 | N/A | |
| 3. Fair value of plan assets | - | - | - | - | - | - | - | - | N/A | |
| **K. Assumptions and currency (fiscal year-end):** | | | | | | | | | | |
| 1. Discount rate at year-end | 6.50% | 6.50% | 6.50% | 6.50% | 6.50% | 6.50% | 6.50% | 6.50% | 6.50% | 6.50% |
| 2. Expected long-term rate of return on plan assets at year-end | 8.50% | N/A | N/A | N/A | N/A | N/A | N/A | 8.50% | N/A | 8.50% |
| 3. Rate of compensation increase at year-end | 4.00% | 4.00% | N/A | N/A | N/A | N/A | 4.00% | 4.00% | N/A | 4.00% |
| 4. Pension increases | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5. First year health care cost increase at year-end | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 8.70% | N/A |
| 6. Ultimate year health care cost increase at year-end | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 4.50% | N/A |
| 7. Year that ultimate health care cost increase is reached (year-end) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 2029 | N/A |
| 8. Local currency | US $ | US $ | US $ | US $ | US $ | US $ | US $ | US $ | US $ | US $ |
| 9. US $ per unit of local currency – beginning of year | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 10. US $ per unit of local currency – end of year | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 1 |
| **L. Assumptions and currency (during fiscal year):** | | | | | | | | | | |
| 1. Discount rate at year-end | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% |
| 2. Expected long-term rate of return on plan assets at year-end | 8.50% | N/A | N/A | N/A | N/A | N/A | N/A | 8.50% | N/A | 8.50% |
| 3. Rate of compensation increase at year-end | 4.00% | 4.00% | N/A | N/A | N/A | N/A | 4.00% | 4.00% | N/A | 4.00% |
| 4. Pension increases | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5. First year health care cost increase during fiscal year | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 7.00% | N/A |
| 6. Ultimate year health care cost increase during fiscal year | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 5.00% | N/A |
| 7. Year that ultimate health care cost increase is reached (during fiscal year) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 2014 | N/A |
| 8. US $ per unit of local currency – fiscal year | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **M. Actual Asset Allocation** | | | | | | | | | | |
| 1. Actual % of assets invested in equities at fiscal year end | 68% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 2. Actual % of assets invested in debt securities at fiscal year end | 24% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 3. Actual % of assets invested in property/real estate assets at fiscal year end | 8% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 4. Actual % of assets invested in cash at fiscal year end | 0% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5. Actual % of employer debt securities included in plan assets | 0% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 6. Actual % of employer equity securities included in plan assets | 0% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| **N. Long Term Target Asset Allocation** | | | | | | | | | | |
| 1. Long term target % of assets invested in equities | 52% – 72% | N/A | N/A | N/A | N/A | N/A | N/A | 52% – 72% | N/A | 52% – 72% |
| 2. Long term target % of assets invested in debt securities | 23% – 35% | N/A | N/A | N/A | N/A | N/A | N/A | 23% – 35% | N/A | 23% – 35% |
| 3. Long term target % of assets invested in property/real estate assets | 0% – 5% | N/A | N/A | N/A | N/A | N/A | N/A | 0% – 5% | N/A | 0% – 5% |
| 4. Long term target % of assets invested in cash | 0% – 5% | N/A | N/A | N/A | N/A | N/A | N/A | 0% – 5% | N/A | 0% – 5% |
| 5. Long term target % of assets invested in private equity | 0% – 9% | N/A | N/A | N/A | N/A | N/A | N/A | 0% – 9% | N/A | 0% – 9% |

**Mercer**

g:\rd\a\reti\rda01h\rep2009\feas87 report09.doc

**Actuarial Valuation Report for the Fiscal Years**
**Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2009 (continued)

| | Ret Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rov Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Country | US | US | US | US | US | US | US | US | US | US |
| Plan name | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 | 6/30/2009 |
| **CURRENT FISCAL YEAR IN US DOLLARS** | | | | | | | | | | |
| Fiscal year ending on | | | | | | | | | | |
| **O. Estimated future contributions and benefit payments** | | | | | | | | | | |
| 1. Expected employer contributions during fiscal year +1 | - | 2,500,000 | 1,500,000 | 270,000 | 3,760,000 | 699,000 | 8,729,000 | 8,729,000 | 4,293,000 | 13,022,000 |
| 2. Expected benefit payments during fiscal year +1 | 35,333,000 | 2,500,000 | 1,500,000 | 270,000 | 3,760,000 | 699,000 | 8,729,000 | 44,062,000 | 4,293,000 | 48,355,000 |
| 3. Expected benefit payments during fiscal year +2 | 33,210,000 | 2,007,000 | 1,583,000 | 288,000 | 3,730,000 | 659,000 | 8,267,000 | 41,477,000 | 3,711,000 | 45,188,000 |
| 4. Expected benefit payments during fiscal year +3 | 34,377,000 | 2,175,000 | 1,572,000 | 306,000 | 3,370,000 | 622,000 | 7,845,000 | 42,222,000 | 3,391,000 | 45,613,000 |
| 5. Expected benefit payments during fiscal year +4 | 34,719,000 | 2,453,000 | 1,599,000 | 326,000 | 2,924,000 | 581,000 | 7,881,000 | 42,600,000 | 3,008,000 | 45,608,000 |
| 6. Expected benefit payments during fiscal year +5 | 34,702,000 | 1,919,000 | 1,627,000 | 347,000 | 2,429,000 | 541,000 | 6,863,000 | 41,565,000 | 1,494,000 | 43,059,000 |
| 7. Expected benefit payments during fiscal years +6 to +10 | 171,922,000 | 9,275,000 | 8,187,000 | 1,231,000 | 9,474,000 | 2,127,000 | 30,294,000 | 202,216,000 | 4,830,000 | 207,046,000 |
| **P. Impact of 1% increase (decrease) in health care cost increase assumption** | | | | | | | | | | |
| 1. 1% increase on service cost and interest cost | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 24,192 | N/A |
| 2. 1% increase on benefit obligation | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 358,407 | N/A |
| 3. 1% decrease on service cost and interest cost | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | (22,541) | N/A |
| 4. 1% decrease on benefit obligation | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | (333,937) | N/A |
| **RECONCILIATIONS IN US Dollars** | | | | | | | | | | |
| **Q. Reconciliation of prepaid/(unfunded accrued) pension or postretirement benefit cost** | | | | | | | | | | |
| 1. Amount at beginning of current year | 281,471,544 | (24,568,417) | (20,242,843) | (2,784,467) | (26,881,941) | (4,200,686) | (78,678,354) | 202,793,190 | (63,529,834) | 139,263,356 |
| 2. Plan mergers / transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Net periodic benefit (cost) income | 31,396,839 | (1,377,517) | (1,138,465) | (153,240) | (1,666,749) | (356,371) | (4,690,342) | 26,706,497 | 1,819,597 | 28,526,094 |
| 4. Employer contributions | - | 2,652,887 | 1,522,680 | 255,186 | 3,538,045 | 942,282 | 8,911,080 | 8,911,080 | 3,681,298 | 12,592,378 |
| 5. Curtailments | 3,278,876 | 7,731 | - | - | - | - | 7,731 | 3,286,607 | 7,870,608 | 11,157,215 |
| 6. Settlements | - | - | - | - | - | - | - | - | - | - |
| 7. Adjustments | - | - | - | - | - | - | - | - | - | - |
| 8. Special Termination | - | - | - | - | - | - | - | - | - | - |
| 9. Exchange rate adjustment | (3,098,201) | - | - | - | - | - | - | (3,098,201) | - | (3,098,201) |
| 10. Amount at end of current year | 313,049,058 | (23,285,316) | (19,856,628) | (2,682,521) | (25,010,645) | (3,614,775) | (74,449,885) | 238,599,173 | (50,158,331) | 188,440,842 |
| **R. Reconciliation of unrecognized transition obligation** | | | | | | | | | | |
| 1. Unrecognized at beginning of year | - | - | - | - | - | - | - | - | - | - |
| 2. Transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Amortization | - | - | - | - | - | - | - | - | - | - |
| 4. Curtailment and Settlement | - | - | - | - | - | - | - | - | - | - |
| 5. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 6. Amount at end of current year | - | - | - | - | - | - | - | - | - | - |
| **S. Reconciliation of prior service cost (credit)** | | | | | | | | | | |
| 1. Amount at beginning of current year | (3,337,115) | (7,868) | - | - | - | - | (7,868) | (3,344,983) | (22,097,270) | (25,442,253) |
| 2. Transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Amortization | 58,239 | 137 | - | - | - | - | 137 | 58,376 | 1,924,860 | 1,983,236 |
| 4. Curtailment | 3,278,876 | 7,731 | - | - | - | - | 7,731 | 3,286,607 | 7,870,608 | 11,157,215 |
| 5. Plan Amendments | - | - | - | - | - | - | - | - | - | - |
| 6. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 7. Amount at end of current year | - | - | - | - | - | - | - | - | (12,301,802) | (12,301,802) |
| **T. Reconciliation of net (gain) loss** | | | | | | | | | | |
| 1. Amount at beginning of current year | 27,278,323 | (2,919,534) | (2,225,780) | (288,840) | (2,233,237) | 956,110 | (6,711,281) | 20,567,042 | (15,876,789) | 4,690,253 |
| 2. Transfers | - | 79,103 | 24,843 | 4,246 | - | (44,850) | 63,342 | 63,342 | 1,517,754 | 1,581,096 |
| 3. Amortization | (2,242,082) | - | - | - | - | - | - | (2,242,082) | 1,286,372 | (955,710) |
| 4. Curtailment and Settlement | - | - | - | - | - | - | - | - | - | - |
| 5. New (gain)/loss | 184,531,176 | 331,554 | 518,836 | (277,995) | 711,402 | 283,689 | 1,567,486 | 186,098,662 | (6,360,532) | 179,738,130 |
| 6. Plan Amendments | - | - | - | - | - | - | - | - | - | - |
| 7. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 8. Amount at end of current year | 209,567,417 | (2,508,877) | (1,682,101) | (562,589) | (1,521,835) | 1,194,949 | (5,080,453) | 204,486,964 | (19,433,195) | 185,053,769 |

**Mercer**

**Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2008

| Country | Ret Plan US 6/30/2008 | Excess Plan US 6/30/2008 | ERP US 6/30/2008 | Exec-Cash Bal US 6/30/2008 | SERP(all) US 6/30/2008 | Direct & Row Ed US 6/30/2008 | Total Non-Funded US 6/30/2008 | Total Pension US 6/30/2008 | Retiree Medical US 6/30/2008 | Total US 6/30/2008 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Plan name** / **CURRENT FISCAL YEAR IN US DOLLARS** / Fiscal year ending on | | | | | | | | | | |
| **A. Change in benefit obligation** | | | | | | | | | | |
| 1. Benefit obligation at beginning of year | 441,496,576 | 25,196,147 | 19,317,715 | 2,765,050 | 27,343,738 | 4,761,980 | 79,384,630 | 520,881,206 | 61,724,204 | 582,605,410 |
| 2. Service cost | 8,516,866 | 405,040 | | 134,062 | 186,442 | | 725,544 | 9,242,410 | 413,336 | 9,655,746 |
| 3. Interest cost | 26,436,096 | 1,476,142 | 1,147,435 | 161,936 | 1,580,270 | 263,668 | 4,629,451 | 31,065,547 | 3,370,367 | 34,435,914 |
| 4. Participant contributions | - | | | | | | | | | |
| 5. Plan amendments | (3,337,115) | (7,868) | | | | | (7,868) | (3,344,983) | (22,672,720) | (26,017,703) |
| 6. Actuarial (gain) or loss | (20,282,302) | (1,637,565) | (797,517) | (326,592) | (1,028,519) | 1,183,797 | (2,606,396) | (22,888,698) | (12,527,495) | (35,416,193) |
| 7. Benefits paid | (39,357,293) | (3,790,881) | (1,650,570) | (238,829) | (3,433,227) | (1,052,649) | (10,166,156) | (49,523,449) | (4,751,917) | (54,275,366) |
| 8. Acquisitions and mergers | - | - | - | - | - | - | - | - | - | - |
| 9. Divestitures and spinoffs | - | - | - | - | - | - | - | - | - | - |
| 10. Transfers | - | - | - | - | - | - | - | - | - | - |
| 11. Plan curtailments | - | - | - | - | - | - | - | - | - | - |
| 12. Plan settlements | - | - | - | - | - | - | - | - | - | - |
| 13. Special termination benefits | - | - | - | - | - | - | - | - | - | - |
| 14. Expenses, taxes and premiums paid | - | - | - | - | - | - | - | - | - | - |
| 15. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 16. Benefit obligation at end of year | 413,472,828 | 21,641,015 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,959,205 | 485,432,033 | 25,555,775 | 510,987,808 |
| **B. Change in plan assets** | | | | | | | | | | |
| 1. Fair value of plan assets at beginning of year | 746,146,610 | | | | | | | 746,146,610 | | 746,146,610 |
| 2. Actual return on plan assets | (35,786,153) | | | | | | | (35,786,153) | | (35,786,153) |
| 3. Employer contributions | | 3,790,881 | 1,650,570 | 238,829 | 3,433,227 | 1,052,649 | 10,166,156 | 10,166,156 | 4,751,917 | 14,918,073 |
| 4. Participant contributions | - | - | - | - | - | - | - | - | - | - |
| 5. Acquisitions and mergers | - | - | - | - | - | - | - | - | - | - |
| 6. Divestitures and spinoffs | - | - | - | - | - | - | - | - | - | - |
| 7. Transfers | - | - | - | - | - | - | - | - | - | - |
| 8. Plan settlements | - | - | - | - | - | - | - | - | - | - |
| 9. Benefits paid | (39,357,293) | (3,790,881) | (1,650,570) | (238,829) | (3,433,227) | (1,052,649) | (10,166,156) | (49,523,449) | (4,751,917) | (54,275,366) |
| 10. Expenses, taxes and premiums paid | - | - | - | - | - | - | - | - | - | - |
| 11. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 12. Fair value of plan assets at end of year | 671,003,164 | - | - | - | - | - | - | 671,003,164 | - | 671,003,164 |
| **C. Reconciliation of funded status** | | | | | | | | | | |
| 1. Fair value of plan assets at end of year | 671,003,164 | - | | | | | | 671,003,164 | | 671,003,164 |
| 2. Benefit Obligation at end of year | 413,472,828 | 21,641,015 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,959,205 | 485,432,033 | 25,555,775 | 510,987,808 |
| 3. Funded Status | 257,530,336 | (21,641,015) | (18,017,063) | (2,495,627) | (24,648,704) | (5,156,796) | (71,959,205) | 185,571,131 | (25,555,775) | 160,015,356 |
| 4. Net amount recognized in statement of financial position | 257,530,336 | (21,641,015) | (18,017,063) | (2,495,627) | (24,648,704) | (5,156,796) | (71,959,205) | 185,571,131 | (25,555,775) | 160,015,356 |
| **D. Amounts recognized in the statement of financial position consist of:** | | | | | | | | | | |
| 1. Noncurrent assets | 257,530,336 | - | | | | | | 257,530,336 | | 257,530,336 |
| 2. Current liabilities | - | (2,700,000) | (1,500,000) | (300,000) | (3,600,000) | (1,000,000) | (9,100,000) | (9,100,000) | (4,935,000) | (14,035,000) |
| 3. Noncurrent liabilities | - | (18,941,015) | (16,517,063) | (2,195,627) | (21,048,704) | (4,156,796) | (62,859,205) | (62,859,205) | (20,620,775) | (83,479,980) |
| 4. Net amount recognized in statement of financial position | 257,530,336 | (21,641,015) | (18,017,063) | (2,495,627) | (24,648,704) | (5,156,796) | (71,959,205) | 185,571,131 | (25,555,775) | 160,015,356 |

**Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2008 (continued)

| Country | Ret Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rev Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Plan name | US | US | US | US | US | US | US | US | US | Total |
| **E. Amounts recognized in accumulated other comprehensive income consist of:** | | | | | | | | | | |
| 1. Initial net asset (obligation) | – | – | – | – | – | – | – | – | – | – |
| 2. Prior service credit (cost) | 3,337,115 | 7,868 | – | – | – | – | 7,868 | 3,344,983 | 22,097,270 | 25,442,253 |
| 3. Net gain (loss) | (27,278,323) | 2,919,534 | 2,225,760 | 288,840 | 2,233,237 | (956,110) | 6,711,281 | (20,567,042) | 15,876,789 | (4,690,253) |
| 4. Accumulated other comprehensive income (loss) | (23,941,208) | 2,927,402 | 2,225,760 | 288,840 | 2,233,237 | (956,110) | 6,719,149 | (17,222,059) | 37,974,059 | 20,752,000 |
| 5. Prepaid (unfunded accrued) pension [or postretirement benefit] cost | 281,471,544 | (24,568,417) | (20,242,843) | (2,784,467) | (26,881,941) | (4,200,686) | (78,678,354) | 202,793,190 | (63,529,834) | 139,263,356 |
| **F. Components of net periodic benefit cost** | | | | | | | | | | |
| 6. Net amount recognized in statement of financial position | 257,530,336 | (21,641,015) | (18,017,063) | (2,495,627) | (24,648,704) | (5,156,796) | (71,959,205) | 185,571,131 | (25,555,775) | 160,015,356 |
| 1. Service Cost | 8,516,866 | 405,040 | – | 134,062 | 186,442 | – | 725,544 | 9,242,410 | 413,336 | 9,655,746 |
| 2. Interest Cost | 26,436,096 | 1,476,142 | 1,147,435 | 161,936 | 1,580,270 | 263,668 | 4,629,451 | 31,065,547 | 3,370,367 | 34,435,914 |
| 3. Expected Return on Assets | (60,111,888) | – | – | – | – | – | – | (60,111,888) | – | (60,111,888) |
| 4. Amortization of Initial Net (Asset)/Obligation | – | – | – | – | – | – | – | – | – | – |
| 5. Amortization of Prior Service Cost (Credit) | – | – | – | – | – | – | – | – | (575,450) | (575,450) |
| 6. Amortization of Net Actuarial (Gain)/Loss | – | – | – | – | – | – | – | – | – | – |
| 7. SFAS 88 (Gain)/Loss due to Curtailments | – | – | – | – | – | – | – | – | – | – |
| 8. SFAS 88 (Gain)/Loss due to Settlements | – | – | – | – | – | – | – | – | – | – |
| 9. Cost for Special Termination Benefits | – | – | – | – | – | – | – | – | – | – |
| 10. Total Periodic Benefit Cost Recognition | (25,158,936) | 1,881,182 | 1,147,435 | 295,998 | 1,766,712 | 263,668 | 5,354,995 | (19,803,941) | 3,208,253 | (16,595,688) |
| **G. Changes recognized in other comprehensive income** | | | | | | | | | | |
| 1. Transition obligation during the year | (3,337,115) | (7,868) | – | – | – | – | (7,868) | (3,344,983) | (22,097,270) | (25,442,253) |
| 2. Prior service (cost) credit arising during the year | – | – | – | – | – | – | – | – | – | – |
| 3. Net loss (gain) arising during the year | 75,615,749 | (1,637,565) | (797,517) | (326,592) | (1,028,519) | 1,183,797 | (2,606,396) | 73,009,353 | (12,527,495) | 60,481,858 |
| 4. Amortization of Transition Obligation | – | – | – | – | – | – | – | – | – | – |
| 5. Amortization of Prior Service (Cost) Credit | – | – | – | – | – | – | – | – | 575,450 | 575,450 |
| 6. Amortization of Net (Loss) Gain | – | – | – | – | – | – | – | – | – | – |
| 7. Impact of curtailments settlements | – | – | – | – | – | – | – | – | – | – |
| 8. Adjustments | – | – | – | – | – | – | – | – | – | – |
| 9. Exchange rate adjustment | – | – | – | – | – | – | – | – | – | – |
| 10. Total recognized in other comprehensive loss (income) | 72,278,634 | (1,645,433) | (797,517) | (326,592) | (1,028,519) | 1,183,797 | (2,614,264) | 69,664,370 | (34,049,315) | 35,615,055 |
| 11. Total recognized in net periodic benefit and other comprehensive loss (income) | 47,119,698 | 235,749 | 349,918 | (30,594) | 738,193 | 1,447,465 | 2,740,731 | 49,860,429 | (30,841,062) | 19,019,367 |

*Estimated amounts that will be amortized from accumulated other comprehensive income over the next fiscal year*

| Country | Ret Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rev Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Initial net asset (obligation) | – | – | – | – | – | – | – | – | – | – |
| 2. Prior service credit (cost) | 349,436 | 824 | – | – | – | – | 824 | 350,260 | 2,762,159 | 3,112,419 |
| 3. Net gain (loss) | – | 79,103 | 24,843 | 4,246 | (44,850) | – | 63,342 | 63,342 | 1,665,151 | 1,728,493 |
| **H. Accumulated Benefit Obligation** | 410,367,384 | 21,289,930 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,608,120 | 481,975,504 | N/A | |

**Mercer**

g:\rda\retrda01h\rep2009\fas87 report09.doc

10

The Reader's Digest Association, Inc.

**Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009**

# Information for Disclosure – Fiscal Year Ending June 30, 2008 (continued)

| Plan name | Ret Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rev Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **I. Additional year-end information for plans with accumulated benefit obligations in excess of plan assets:** | | | | | | | | | | |
| 1. Projected benefit obligation | - | 21,641,015 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,959,205 | 71,959,205 | N/A | |
| 2. Accumulated benefit obligation | - | 21,289,930 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,608,120 | 71,608,120 | N/A | |
| 3. Fair value of plan assets | - | - | - | - | - | - | - | - | N/A | |
| **J. Additional year-end information for plans with projected benefit obligations in excess of plan assets:** | | | | | | | | | | |
| 1. Projected benefit obligation | - | 21,641,015 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,959,205 | 71,959,205 | N/A | |
| 2. Accumulated benefit obligation | - | 21,289,930 | 18,017,063 | 2,495,627 | 24,648,704 | 5,156,796 | 71,608,120 | 71,608,120 | N/A | |
| 3. Fair value of plan assets | - | - | - | - | - | - | - | - | N/A | |
| **K. Assumptions and currency (fiscal year-end)** | | | | | | | | | | |
| 1. Discount rate at year-end | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% | 6.75% |
| 2. Expected long-term rate of return on plan assets at year-end | 8.50% | N/A | N/A | N/A | N/A | N/A | N/A | 8.50% | N/A | 8.50% |
| 3. Rate of compensation increase at year-end | 4.00% | 4.00% | N/A | 4.00% | N/A | N/A | 4.00% | 4.00% | N/A | 4.00% |
| 4. Pension increases | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5. First year health care cost increase at year-end | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 7.00% | N/A |
| 6. Ultimate year health care cost increase at year-end | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 5.00% | N/A |
| 7. Year that ultimate health care cost increase is reached (year-end) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 2014 | N/A |
| 8. Local currency | US $ | US $ | US $ | US $ | US $ | US $ | US $ | US $ | US $ | US $ |
| 9. US $ per unit of local currency — beginning of year | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 10. US $ per unit of local currency — end of year | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **L. Assumptions and currency (during fiscal year)** | | | | | | | | | | |
| 1. Discount rate at year-end | 6.25% | 6.25% | 6.25% | 6.25% | 6.25% | 6.25% | 6.25% | 6.25% | 6.25% | 6.25% |
| 2. Expected long-term rate of return on plan assets at year-end | 8.50% | N/A | N/A | N/A | N/A | N/A | N/A | 8.50% | N/A | 8.50% |
| 3. Rate of compensation increase at year-end | 4.00% | 4.00% | N/A | 4.00% | N/A | N/A | 4.00% | 4.00% | 4.00% | 4.00% |
| 4. Pension increases | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5. First year health care cost increase during fiscal year | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 8.00% | N/A |
| 6. Ultimate year health care cost increase during fiscal year | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 5.00% | N/A |
| 7. Year that ultimate health care cost increase is reached (during fiscal year) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 2014 | N/A |
| 8. US $ per unit of local currency – fiscal year | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |

**Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2008 (continued)

| Country | US | US | US | US | US | US | US | US | US | US |
|---|---|---|---|---|---|---|---|---|---|---|
| Plan name | Ret Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rev Ed | Total Non-Funded | Total Pension | Retiree Medical | Total |
| **M. Actual Asset Allocation** | | | | | | | | | | |
| 1. Actual % of assets invested in equities at fiscal year end | 69% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 2. Actual % of assets invested in debt securities at fiscal year end | 24% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 3. Actual % of assets invested in property/real estate assets at fiscal year end | | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 4. Actual % of assets invested in cash at fiscal year end | 6% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5. Actual % of employer debt securities included in plan assets | 1% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 6. Actual % of employer equity securities included in plan assets | 0% | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| **N. Long Term Target Asset Allocation** | | | | | | | | | | |
| 1. Long term target % of assets invested in equities | 52% – 72% | N/A | N/A | N/A | N/A | N/A | N/A | 52% – 72% | N/A | 52% – 72% |
| 2. Long term target % of assets invested in debt securities | 23% – 35% | N/A | N/A | N/A | N/A | N/A | N/A | 23% – 35% | N/A | 23% – 35% |
| 3. Long term target % of assets invested in property/real estate assets | 0% – 5% | N/A | N/A | N/A | N/A | N/A | N/A | 0% – 5% | N/A | 0% – 5% |
| 4. Long term target % of assets invested in cash | 0% – 5% | N/A | N/A | N/A | N/A | N/A | N/A | 0% – 5% | N/A | 0% – 5% |
| 5. Long term target % of assets invested in private equity | 0% – 9% | N/A | N/A | N/A | N/A | N/A | N/A | 0% – 9% | N/A | 0% – 9% |
| **O. Estimated future contributions and benefit payments** | | | | | | | | | | |
| 1. Expected employer contributions during fiscal year +1 | – | 2,700,000 | 1,500,000 | 300,000 | 3,600,000 | 1,000,000 | 9,100,000 | 9,100,000 | 4,935,000 | 14,035,000 |
| 2. Expected benefit payments during fiscal year +1 | 34,729,000 | 2,700,000 | 1,500,000 | 300,000 | 3,600,000 | 1,000,000 | 9,100,000 | 43,829,000 | 4,935,000 | 48,764,000 |
| 3. Expected benefit payments during fiscal year +2 | 35,757,000 | 2,486,000 | 1,507,000 | 309,000 | 3,732,000 | 996,000 | 9,030,000 | 44,787,000 | 4,593,000 | 49,380,000 |
| 4. Expected benefit payments during fiscal year +3 | 34,351,000 | 2,093,000 | 1,575,000 | 328,000 | 3,498,000 | 958,000 | 8,452,000 | 42,803,000 | 4,324,000 | 47,127,000 |
| 5. Expected benefit payments during fiscal year +4 | 36,103,000 | 2,374,000 | 1,563,000 | 348,000 | 3,142,000 | 923,000 | 8,350,000 | 44,453,000 | 4,058,000 | 48,511,000 |
| 6. Expected benefit payments during fiscal year +5 | 36,513,000 | 2,502,000 | 1,585,000 | 370,000 | 2,741,000 | 865,000 | 8,063,000 | 44,596,000 | 3,692,000 | 48,288,000 |
| 7. Expected benefit payments during fiscal years +6 to +10 | 182,503,000 | 10,494,000 | 8,132,000 | 1,798,000 | 9,928,000 | 3,855,000 | 34,207,000 | 216,710,000 | 8,673,000 | 225,383,000 |
| **P. Impact of 1% increase / (decrease) in health care cost trend assumption** | | | | | | | | | | |
| 1. 1% increase on service cost and interest cost | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 56,748 | N/A |
| 2. 1% increase on benefit obligation | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 907,962 | N/A |
| 3. 1% decrease on service cost and interest cost | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | (51,204) | N/A |
| 4. 1% decrease on benefit obligation | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | (919,259) | N/A |

**Actuarial Valuation Report for the Fiscal Years Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Information for Disclosure – Fiscal Year Ending June 30, 2008 (continued)

| Country | US | US | US | US | US | US | US | US | US | US |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Plan name | Ret Plan | Excess Plan | ERP | Exec Cash Bal | SERP(all) | Direct & Rov Ed | Total Non-Funded | Total Pension | Retiree Medical | **Total** |
| **Q. Reconciliation of prepaid/(unfunded accrued) pension or postretirement benefit cost** | | | | | | | | | | |
| 1. Amount at beginning of current year | 256,312,608 | (26,478,116) | (20,745,978) | (2,727,298) | (28,548,456) | (4,989,667) | (83,489,515) | 172,823,093 | (65,073,498) | 107,749,595 |
| 2. Plan mergers / transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Net periodic benefit (cost) income | 25,158,936 | (1,981,182) | (1,147,435) | (295,998) | (1,766,712) | (263,668) | (5,354,995) | 19,803,941 | (3,208,253) | 16,595,688 |
| 4. Employer contributions | - | 3,790,881 | 1,650,570 | 238,829 | 3,433,227 | 1,052,649 | 10,166,156 | 10,166,156 | 4,751,917 | 14,918,073 |
| 5. Curtailments | - | - | - | - | - | - | - | - | - | - |
| 6. Settlements | - | - | - | - | - | - | - | - | - | - |
| 7. Adjustments | - | - | - | - | - | - | - | - | - | - |
| 8. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 9. Amount at end of current year | 281,471,544 | (24,568,417) | (20,242,843) | (2,784,467) | (26,881,941) | (4,200,686) | (78,678,354) | 202,793,190 | (63,529,834) | 139,263,356 |
| **R. Reconciliation of unrecognized transition obligation** | | | | | | | | | | |
| 1. Unrecognized at beginning of year | - | - | - | - | - | - | - | - | - | - |
| 2. Transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Amortization | - | - | - | - | - | - | - | - | - | - |
| 4. Curtailment and Settlement | - | - | - | - | - | - | - | - | - | - |
| 5. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 6. Amount at end of current year | - | - | - | - | - | - | - | - | - | - |
| **S. Reconciliation of prior service cost (credit)** | | | | | | | | | | |
| 1. Amount at beginning of current year | - | - | - | - | - | - | - | - | 575,450 | 575,450 |
| 2. Transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Amortization | - | - | - | - | - | - | - | - | - | - |
| 4. Curtailment | - | - | - | - | - | - | - | - | - | - |
| 5. Plan Amendments | (3,337,115) | (7,868) | - | - | - | - | (7,868) | (3,344,983) | (22,672,720) | (26,017,703) |
| 6. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 7. Amount at end of current year | (3,337,115) | (7,868) | - | - | - | - | (7,868) | (3,344,983) | (22,097,270) | (25,442,253) |
| **T. Reconciliation of net (gain) loss** | | | | | | | | | | |
| 1. Amount at beginning of current year | (48,337,426) | (1,281,969) | (1,428,263) | 37,752 | (1,204,718) | (227,687) | (4,104,885) | (52,442,311) | (3,349,294) | (55,791,605) |
| 2. Transfers | - | - | - | - | - | - | - | - | - | - |
| 3. Amortization | - | - | - | - | - | - | - | - | - | - |
| 4. Curtailment and Settlement | - | - | - | - | - | - | - | - | - | - |
| 5. New (gain)/loss | 75,615,749 | (1,637,565) | (797,517) | (326,592) | (1,028,519) | 1,183,797 | (2,606,396) | 73,009,353 | (12,527,495) | 60,481,858 |
| 6. Adjustments | - | - | - | - | - | - | - | - | - | - |
| 7. Exchange rate adjustment | - | - | - | - | - | - | - | - | - | - |
| 8. Amount at end of current year | 27,278,323 | (2,919,534) | (2,225,780) | (288,840) | (2,233,237) | 956,110 | (6,711,281) | 20,567,042 | (15,876,789) | 4,690,253 |

RECONCILIATIONS IN US Dollars

The Reader's Digest Association, Inc.

14



# Assets

**Development of Market Related Value of Assets as of June 30, 2009 - Retirement Plan**

| | Equities | Private Equity | Total Equity | Fixed Income | Cash | Real Estate | Total |
|---|---|---|---|---|---|---|---|
| Market Value of Assets, June 30, 2008 | $405,702,171 | $58,135,318 | $463,837,489 | $158,519,431 | $5,484,201 | $43,162,043 | $671,003,164 |
| Income | 4,085,935 | 50,559 | 4,136,494 | 7,565,874 | 377,778 | - | 12,080,146 |
| Fees | (1,412,966) | - | (1,412,966) | (137,148) | (1,142,097) | - | (2,692,211) |
| Appreciation | (111,504,851) | (14,899,424) | (126,404,275) | 373,967 | (721,731) | (475,176) | (127,227,215) |
| Transfers/Benefit Payments | 157,961 | 5,575,182 | 5,733,143 | (45,598,069) | (3,511,712) | - | (43,376,638) |
| Market Value of Assets, June 30, 2009 | $297,028,250 | $48,861,635 | $345,889,885 | $120,724,055 | $486,439 | $42,686,867 | $509,787,246 |
| | | | | | | | |
| Expected Return on Assets (10% for Equities) | | | 46,599,758 | N/A | N/A | N/A | |
| Actual Return on Assets | | | (123,680,747) | N/A | N/A | N/A | |
| Gain/(Loss) | | | (170,280,505) | N/A | N/A | N/A | |
| 2009 Unrecognized Gain/(Loss) (80% of base) | | | (136,224,404) | - | - | - | (136,224,404) |
| 2008 Unrecognized Gain/(Loss) (60% of base) | | | (62,445,701) | - | - | - | (62,445,701) |
| 2007 Unrecognized Gain/(Loss) (40% of base) | | | 10,214,386 | - | - | - | 10,214,386 |
| Market Related Value of Assets, June 30, 2009 | | | $534,345,604 | $120,724,055 | $486,439 | $42,686,867 | **$698,242,965** |

**Actuarial Valuation Report for the Fiscal Years**
**Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

**Development of Market Related Value of Assets as of June 30, 2008 - Retirement Plan**

| | Equities | Private Equity | Total Equity | Fixed Income | Cash | Real Estate | Total |
|---|---|---|---|---|---|---|---|
| Market Value of Assets, June 30, 2007 | $496,937,088 | $38,809,034 | $535,746,122 | $164,005,138 | $5,405,205 | $40,990,145 | $746,146,610 |
| Income | 5,210,495 | 233,932 | 5,444,427 | 8,732,829 | 521,264 | 421,069 | 15,119,589 |
| Fees | (1,509,227) | - | (1,509,227) | (198,234) | (1,142,513) | - | (2,849,974) |
| Appreciation | (64,951,122) | 9,423,114 | (55,528,008) | 4,577,822 | 13,472 | 2,194,008 | (48,742,706) |
| Transfers/Benefit Payments | (29,985,063) | 9,669,238 | (20,315,825) | (18,598,124) | 686,773 | (443,179) | (38,670,355) |
| Market Value of Assets, June 30, 2008 | $405,702,171 | $58,135,318 | $463,837,489 | $158,519,431 | $5,484,201 | $43,162,043 | $671,003,164 |
| | | | | | | | |
| Expected Return on Assets (10% for Equities) | | | 52,483,360 | N/A | N/A | N/A | |
| Actual Return on Assets | | | (51,592,808) | N/A | N/A | N/A | |
| Gain/(Loss) | | | (104,076,168) | | | | |
| 2008 Unrecognized Gain/(Loss) (80% of base) | | | (83,260,934) | - | - | - | (83,260,934) |
| 2007 Unrecognized Gain/(Loss) (60% of base) | | | 15,321,579 | - | - | - | 15,321,579 |
| Market Related Value of Assets, June 30, 2008 | | | $531,776,844 | $158,519,431 | $5,484,201 | $43,162,043 | **$738,942,519** |

**Mercer**

g:\rda\retrda01h\rep\2009\fas87 report09.doc



**5**

# Development of Expense – Fiscal Year Ending June 30, 2009

## Prior Service Cost Amortizations

| | Amortization Period (Years) | Unrecognized Amount at 7/1/2008 | Amount Recognized During Year | Unrecognized Amount at 6/30/2009 |
|---|---|---|---|---|
| **(A)  Reader's Digest Retirement Plan** | N/A | $  (3,337,115) | $  3,337,115 | $  - |
| **(B)  Reader's Digest Excess Plan** | N/A | $  (7,868) | $  7,868 | $  - |
| **(C)  Reader's Digest Retiree Medical Plan** | 7.00 | $  (22,097,270) | $  9,795,468 | $  (12,301,802) |
| 3/31/2008 Plan Change of $(22,672,720) | | | | |

**Actuarial Valuation Report for the Fiscal Years**
**Ending June 30, 2008 and June 30, 2009**

The Reader's Digest Association, Inc.

# Other Information for Disclosure – Fiscal Year Ending June 30, 2009

## Estimated Amortization of Unrecognized (Gain)/Loss for Fiscal Year Ending 2010

| | Reader's Digest Retirement Plan | Reader's Digest Excess Plan | Executive Retirement Plan | Executive Cash Balance Plan | SERP | Direct & Rov Ed | Postretirement Medical & Dental Plans |
|---|---|---|---|---|---|---|---|
| l. Unrecognized (gain)/loss subject to amortization as of June 30, 2009 | | | | | | | |
| a. Projected benefit obligation/ accumulated postretirement benefit obligation | $ 406,305,605 | $ 20,776,439 | $ 18,174,527 | $ 2,119,932 | $ 23,488,810 | $ 4,809,724 | $ 18,423,334 |
| b. Fair value of plan assets | 509,787,246 | 0 | 0 | 0 | 0 | 0 | 0 |
| c. Unrecognized transition (asset)/obligation | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| d. Unrecognized prior service cost | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| e. (Accrued)/prepaid pension cost | 313,049,058 | (23,285,316) | (19,856,628) | (2,682,521) | (25,010,645) | (3,614,775) | (12,301,802) |
| f. Unrecognized (gain)/loss $(a - b - c - d + e.)$ | 209,567,417 | (2,508,877) | (1,682,101) | (562,589) | (1,521,835) | 1,194,949 | (50,158,331) |
| g. Market-related value of plan assets | 698,242,965 | 0 | 0 | 0 | 0 | 0 | (19,433,195) |
| h. Excess of fair value over market related value $(b. - g.)$ | (188,455,719) | 0 | 0 | 0 | 0 | 0 | 0 |
| i. Unrecognized (gain)/loss potentially subject to amortization $(f. + h.)$ | 21,111,698 | (2,508,877) | (1,682,101) | (562,589) | (1,521,835) | 1,194,949 | (19,433,195) |
| j. 10% of the larger of a. or g. | 69,824,297 | 2,077,644 | 1,817,453 | 211,993 | 2,348,881 | 480,972 | 1,842,333 |
| k. Unrecognized (gain)/loss subject to amortization (excess of i. over j., if any) | 0 | (431,233) | 0 | (350,596) | 0 | 713,977 | (17,590,862) |
| l. Average years of future service | 9.63 | 9.63 | 16.31 | 8.25 | 1.00 | 9.26 | 9.52 |
| m. **Amortization amount** $(k. \div l.)$ | $ 0 | $ (44,780) | $ 0 | $ (42,496) | $ 0 | $ 77,103 | $ (1,847,780) |

**Mercer**

g:\rda\retrda01h\rep\2009\fea87 report09.doc

17

Actuarial Valuation Report for the Fiscal Years
Ending June 30, 2008 and June 30, 2009

The Reader's Digest Association, Inc.

## 6

# Participant Data

## Plan Participants Included in the Valuation as of July 1, 2008

|  | Reader's Digest Retirement Plan | Reader's Digest Excess Plan | Executive Retirement Plan | Executive Cash Balance Plan | SERP Agreements (1981 & later inc. QSP) | Direct and Roving Editors Plans | Retiree Medical |
|---|---|---|---|---|---|---|---|
| Active participants | 1,267 | * | 0 | 0 | 3 | 0 | 632 |
| Participants with deferred benefits | 1,417 | 41 | 0 | 0 | 11 | 1 | 0 |
| Participants receiving benefits | 2,138 | 59 | 16 | 4 | 72 | 61 | 1,595 |
| **Total** | **4,822** | ***** | **16** | **4** | **86** | **62** | **2,227** |

## Plan Participants Included in the Valuation as of July 1, 2007

|  | Reader's Digest Retirement Plan | Reader's Digest Excess Plan | Executive Retirement Plan | Executive Cash Balance Plan | SERP Agreements (1981 & later inc. QSP) | Direct and Roving Editors Plans | Retiree Medical |
|---|---|---|---|---|---|---|---|
| Active participants | 1,461 | * | 0 | 1 | 5 | 0 | 745 |
| Participants with deferred benefits | 1,345 | 38 | 1 | 0 | 13 | 0 | 0 |
| Participants receiving benefits | 2,136 | 61 | 15 | 3 | 62 | 64 | 1,614 |
| **Total** | **4,942** | ***** | **16** | **4** | **80** | **64** | **2,359** |

*Excess Plan valuation includes active participants of the Retirement Plan who either currently or in the future are projected to earn a benefit from the Excess Plan.

**Mercer**

g:\rda\ret\rda01\hrep\2009\fias87 report09.doc

18

**Actuarial Valuation Report for the Fiscal Years** The Reader's Digest Association, Inc.
**Ending June 30, 2008 and June 30, 2009**



**7**

# Actuarial Basis

## Accounting Actuarial Cost Method and Policies

**Actuarial cost method:** Liabilities shown in this report are computed using the service prorate projected unit credit method. For cash balance participants, the accrued liability for each individual participant is the greater of the projected unit credit accrued liability and the cash balance as of the valuation date, and the service cost for each individual participant is the greater of the projected unit credit service cost and the expected plan credits for the year.

**Changes in actuarial cost method since prior valuation:** None.

**Gain/loss amortization method:** Cumulative gains and losses in excess of 10% of the greater of the Projected Benefit Obligation (PBO) / Accumulated Postretirement Benefit Obligation (APBO) or market-related value of plan assets are amortized on a plan by plan basis over the expected remaining years of future active service (or expected remaining inactive lifetime if a plan does not have active participants.)

**Settlement recognition:** The Company will recognize a settlement gain (loss) whenever settlements exceed the sum of service cost and interest cost for the year. The settlement gain (loss) shall equal the sum of any unrecognized net gain (loss) plus any unrecognized transition asset (obligation) times the ratio of the total settlements for the fiscal year over the projected benefit obligation as of the beginning of the fiscal year.

**Prior service cost amortization method:** Plan amendments are amortized in level amounts over the expected remaining years of future active service as of the amendment's effective date.

**Curtailment recognition:** The Company will recognize a curtailment gain (loss) whenever the expected years of future service decreases by more than ten percent due to any event or combination of events during a fiscal year or there is significant reductions in future benefit accruals for at least ten percent of the active participant population. The curtailment gain (loss) shall equal the sum of the pro-rata portion of any unrecognized prior service cost bases plus any unrecognized transition asset (obligation) plus any excess of decrease (increase) in PBO/APBO over unrecognized net loss (gain). The pro-rata portion shall be based on the ratio of expected years of future service for curtailed participants to the expected years of future service for all active participants.

**Attribution period:** The attribution period is the period of an employee's service over which the benefit cost calculation recognizes the expected benefit obligation for that employee. For dental benefits and for medical benefits for employees eligible for uncapped benefits, the beginning of the attribution period is the date of hire, and the end of the attribution period is the full eligibility date, which occurs at the later of age 55 and the date the sum of age and years of service totals 70. For medical benefits for employees eligible for capped benefits, the beginning of the attribution period is the later of date of hire and age 40, which is the beginning of the credited service period, and the end of the attribution period is the full eligibility date, which occurs at the later of the date the employee is eligible to retire with benefits and the date the employee will have 15 years of service earned after age 40.

**Financial and census data:** We have used financial data submitted by the trustee as of June 30, 2008 and 2009 without further audit and participant data as supplied by the plan sponsor as of July 1, 2007 and 2008. Customarily, this information would not be verified by a plan's actuary. We have reviewed the information for internal consistency and we have no reason to doubt its substantial accuracy.

**Projection of obligations from valuation date to year-end measurement date:** Benefit obligations have been rolled-forward from a valuation based on the census date to the year end measurement date based on the assumption that there have been no experience gains or losses, except for changes in discount rate. Discount rate changes are reflected in the year end obligation amounts.

**IRC Section 415(b):** The limitations of Internal Revenue Code Sections 401(a)(17) and 415(b) have been incorporated into our calculations.

**Participants included:** The plan sponsor provides us with data on all employees as of the valuation date, but only those employees who have completed the plan's eligibility requirements are included in the valuation of liabilities. No actuarial liability is included for participants who terminated nonvested prior to the valuation date.

**Discount rate setting process:** The Company estimates the discount rate as the single equivalent rate such that the present value of the plan's PBO/APBO cash flows equals the value of those flows using the Mercer Yield Curve. The discount rate is rounded to the nearest 25 basis points, but not rounded up more than 5 basis points.

**Changes since prior valuation:** None.

## Method for Determining Market-Related Value of Assets

The market-related value of assets is the fair value of assets adjusted to reflect a five-year averaging of the difference between expected and actual equity investment returns. The expected return for equity investments is 10.0%.

### Changes Since Prior Valuation

None.

## Summary of Actuarial Assumptions

The following assumptions were used in valuing the liabilities and benefits under the plans.

| | |
|---|---|
| Measurement date | June 30 |
| Discount rate | 6.75% per year at 6/30/2008, 6.50% per year at 6/30/2009. |
| Long-term rate of return on assets | 8.50% per year. |
| Salary increases | 4.00% per year. |
| Interest on cash balances | 4.50% per year. For the Executive Cash Balance Plan, balances are assumed to grow at the same rate as the discount rate. |
| Cash balance annuity conversion rate | 6.00% per year. |
| Inflation | 2.50% per year, for expected increases in IRC Section 415 and 401(a)(17) limitations. |
| Mortality | ▪ Healthy Life: RP2000 White Collar Combined Active/Retiree Healthy Mortality Table projected 7 years for Males and Females.<br>▪ Disabled Life: RP2000 Disabled Retiree Mortality Tables projected 7 years for Males and Females.<br>See table of sample rates. |
| Disability | See table of sample rates. |
| Withdrawal | Sarason's T-8 termination table. See table of sample rates. |
| Expenses | Long-term rate of return on assets is net of expenses. |
| Retirement age | See table of sample rates. |
| Age difference | A male is assumed to be 3 years older than his spouse. |
| Form of payment[1] | ▪ Non-Cash Balance participants: 75% of future retirees are assumed to elect a 75% joint & survivor annuity and 25% of future retirees are assumed to elect a single life annuity.<br>▪ Cash Balance participants: 75% of future retirees are assumed to elect a lump sum, 15% of future retirees are assumed to elect a single life annuity and 10% of future retirees are assumed to elect a 75% joint & survivor annuity. 100% of vested termination and death benefits are assumed to be paid as immediate lump sums. |

# Summary of Actuarial Assumptions (continued)

| | |
|---|---|
| Health care cost trend rates | The trend rates of incurred claims represent the rate of increase in employer claim payments for the following year over the current year. The trend assumptions follow: |

| Medical | |
|---|---|
| Pre-Medicare | 8.60% to 4.50% (2029) |
| Post-Medicare | 9.10% to 4.50% (2029) |
| | |
| Dental | 7.00% to 4.50% (2029) |

| | |
|---|---|
| Retiree contribution trend rates | Retiree contributions are assumed to increase at the same rates as incurred claims. |
| Basis for claims cost | Future medical claims are projected from current levels based on the health care cost trend rates. Current claims levels vary by age and are modeled based on the plan provisions and retiree claims and expense history for Reader's Digest. |

The expected age 65 annual per capita claim costs (including administrative expenses) are as follow:

| | **2008 Expense** | **2009 Expense** |
|---|---|---|
| Medical | | |
| Medicare Ineligible | $10,320 | $11,173 |
| Medicare Eligible | $2,571 | $2,565 |
| | | |
| Dental | $453 | $471 |
| Part D Subsidy | $340 | $377 |

| | Medical: | |
|---|---|---|
| Aging | **Age** | **Rate** |
| | Under 65 | 3.5% |
| | 65-69 | 2.5 |
| | 70-74 | 2.0 |
| | 75-79 | 1.5 |
| | 80-84 | 1.0 |
| | 85-89 | 0.5 |
| | 90+ | 0.0 |
| | Dental:      None | |

| | |
|---|---|
| Expenses | The claims shown above reflect the actual expenses incurred by the plan. |
| Plan participation | 100% of active employees are assumed to elect medical and dental coverage upon retirement. |
| Marital characteristics | 50% of active employees are assumed to cover spouses at retirement. Wives are assumed to be 3 years younger than their husbands. Actual dependent coverage was used for current retirees. |

**Actuarial Valuation Report for the Fiscal Years**  The Reader's Digest Association, Inc.
**Ending June 30, 2008 and June 30, 2009**

# Summary of Actuarial Assumptions (continued)

| | |
|---|---|
| Medicare Part D subsidy | ▪ It is assumed that Reader's Digest would retain the entire employer subsidy. |
| | ▪ The subsidy amounts are based on the Mercer Medicare Reform Model and standard claims distribution adjusted to the expected Reader's Digest drug cost levels. |

## *Table of Sample Rates*

| | Percentage | | | | | |
|---|---|---|---|---|---|---|
| | **Healthy Mortality** | | **Disabled Mortality** | | | |
| **Attained Age** | **Male** | **Female** | **Male** | **Female** | **Disability** | **Withdrawal** |
| 21 | 0.04% | 0.03% | 0.13% | 0.13% | 0.03% | 11.88% |
| 25 | 0.05 | 0.04 | 0.13 | 0.13 | 0.03 | 11.62 |
| 30 | 0.06 | 0.04 | 0.13 | 0.13 | 0.03 | 11.21 |
| 35 | 0.09 | 0.06 | 3.41 | 3.77 | 0.03 | 10.55 |
| 40 | 0.12 | 0.08 | 2.46 | 2.15 | 0.04 | 9.40 |
| 45 | 0.22 | 0.11 | 2.31 | 1.93 | 0.08 | 7.54 |
| 50 | 0.39 | 0.19 | 2.50 | 2.07 | 0.21 | 4.83 |
| 55 | 0.61 | 0.35 | 2.84 | 2.39 | 0.45 | 1.73 |
| 60 | 0.92 | 0.57 | 3.37 | 2.88 | 0.91 | 0.16 |
| 65 | 1.56 | 0.84 | 4.21 | 3.66 | 0.00 | 0.00 |
| 70 | 2.75 | 1.39 | 5.53 | 4.87 | 0.00 | 0.00 |
| 75 | 4.46 | 2.48 | 7.59 | 6.77 | 0.00 | 0.00 |
| 80 | 7.41 | 4.04 | 10.76 | 9.71 | 0.00 | 0.00 |
| 85 | 11.48 | 6.71 | 15.57 | 14.16 | 0.00 | 0.00 |
| 90 | 16.63 | 10.60 | 22.66 | 20.78 | 0.00 | 0.00 |
| 95 | 23.41 | 15.49 | 32.61 | 30.11 | 0.00 | 0.00 |
| 100 | 31.92 | 21.79 | 46.15 | 42.86 | 0.00 | 0.00 |

| **Attained Age** | **Retirement** |
|---|---|
| 55 | 10.0% |
| 56-59 | 5.0 |
| 60 | 15.0 |
| 61 | 5.0 |
| 62 | 25.0 |
| 63 | 10.0 |
| 64 | 5.0 |
| 65 | 100.0 |

## Claims Cost Development

The average per capita claims costs were developed using actual retiree claim experience for pre-65 and post- 65 retirees and their dependents from July 2007 through June 2008 and blended with experience from the prior two valuations. Claims were adjusted for trend, plan design modifications, aging, and other demographic changes during the period and adjusted to include administrative expenses.

## Development of Healthcare Cost Trend Rates

### *Rationale for Macroeconomic Model to Develop Trend Assumption*
Over the past decade, more sophisticated approaches have been developed and widely adopted for establishing assumptions such as discount rates and asset rates of return.  Due to changes in the accounting environment, which have resulted in increased auditor scrutiny, Mercer has sought to improve the current approach to trend setting by developing a macroeconomic model which will provide adequate support as we respond to auditor questions.

Recently, the short-term trends have dropped below 10% while the ultimate trend rate has remained at 5%.  This has resulted in a very short grade down period, with the ultimate trend being reached in 2018. The problem with this short of a grade down period - when actual trends don't decline rapidly (which they have not recently) - is that we need to re-set the trend table every two to three years.  Doing this regularly implies that the liabilities are understated and the trend assumption is consistently optimistic.

### *Principles underlying the Macroeconomic Model*
Trend rates are made up of the initial rate, the grade-down period, and the ultimate rate.

### *Initial Trend Rates*
The initial trend rates have been selected using an approach similar to what has been used in the past, which included a review of the Oliver Wyman survey of carrier trends.  We reviewed both the absolute value of the carrier trends in the January 2009 survey as well as the change in trend rates relative to the January 2008 survey.  For the administrative expense component, we re-visited the expected actual increase in fees from 2009 to 2010.  As a result of this analysis, we concluded that the initial trend rates that should be used in the valuation are as follows:

- Medical pre 65        8.6%
- Medical post 65       9.1%
- Dental                7.0%

### *Grade-Down Period and Ultimate Trend Rates*
The guiding principles of the macroeconomic model are outlined below:

- Annual healthcare trend for employer-sponsored retiree medical plans will eventually match the annual growth in per capita National Health Expenditures (NHE).

- NHE will eventually grow at the same rate as the per capita US Gross Domestic Product (GDP). The theory here is that NHE cannot consume an ever increasing percentage of GDP.

- Trend projections are linked to projections of NHE and GDP published by the Office of the Actuary for the Centers for Medicare and Medicaid Services (CMS).

**Mercer**

- In 2007, NHE was 16.3% of GDP.  The CMS projections end in 2017, with NHE at 19.5% of GDP. Mercer's model assumes that the NHE excess trend will scale down to zero when NHE equals 22% of GDP (which is assumed to occur in 2029 using the default model assumptions).

- The model also reflects the excess of the Private Payor segment over NHE (i.e., cost shifting), which grades from 0.5% to 0% in 2029.

- The ultimate GDP growth rate is 4.5%, which is a function of expected inflation and expected productivity growth.

# Summary of Plan Provisions

Following is a summary of the major plan provisions used to determine the plan's financial position. It should not be used in determining plan benefits.

### (A) Reader's Digest Retirement Plan

Cash Balance Plan Provisions

| | |
|---|---|
| Effective date and plan year | July 1, 1999. The plan year is July 1 to June 30. |
| Most recent amendment | Effective April 2, 2009. |
| Participating employees | All employees of companies within The Reader's Digest Association, Inc. which adopt the plan. |
| | Reiman employees (includes employees of Reiman Media Group, Inc., Homemaker Ventures, Inc., World Wide Country Tours Inc., and Reiman Advertising and Promotion Inc.) became eligible to participate as of August 1, 2003. |
| Eligibility | Age 21 and one year of service. |
| Contributions | Since July 1, 1981, the company has paid the full cost of benefits under the plan. |
| Compensation considered | Base salary and article payments. For Reiman employees, W-2 pay was used prior to October 1, 2005. Incentive Salary for QSP Field and QSP Products and Programs. |

## Summary of Plan Provisions (continued)

| | |
|---|---|
| Cash Balance account | *Opening Balance*: Equals present value of prior plan accrued benefit at June 30, 1999. For participants age 39 and older, an enhancement was provided. Participants are fully vested in their qualified plan opening balance. QSP Field Employees and Reiman Employees do not receive an opening balance. |

*Base Credits*: Effective July 1, 2008: 5% of compensation, or 8% of compensation if Participant on July 1, 2008 is age 50 or over and has ten or more years of service.

Prior to July 1, 2008, the chart below illustrates the annual percentage of compensation credited to a participant's account:

| Age | % of Base Pay |
|---|---|
| < 30 | 3% |
| 30-34 | 4% |
| 35-39 | 5% |
| 40-44 | 6% |
| 45-49 | 8% |
| 50-54 | 10% |
| 55+ | 12% |

Prior to July 1, 2008, the percentages are as follows for Reiman employees:

| Age | % of Base Pay |
|---|---|
| < 40 | 5% |
| 40-44 | 6% |
| 45-49 | 7% |
| 50+ | 8% |

Prior to October 1, 2005, Reiman employees were credited with a flat 8% of compensation.

*Interest Credits*: Added to the account each month based on the average yield of the previous quarter's one-year Treasury Constant Maturities plus one percent.

| | |
|---|---|
| Deferred vested benefit | An employee who terminates employment after at least three years of service (five years of service for terminations prior to July 1, 2008) is entitled to a benefit based on his Cash Balance Account at date of termination. |

Due to the transfer of pension assets to a retiree health account, all participants as of June 30, 2003 are vested in their June 30, 2003 accrued benefit.

# Summary of Plan Provisions (continued)

| | |
|---|---|
| Disability benefit | Participants who receive benefits under the Company's long-term disability plan and who become disabled prior to July 1, 2008 continue to accrue benefits while disabled based on compensation at the date of disability. Participants who became disabled on or after April 1, 2007 and before July 1, 2008 shall be entitled to at most 24 months of base credits. |
| Death benefit | The current account balance is paid out to the designated beneficiary upon the death of an active participant. |
| Special Termination Benefit | For a select group of employees who were involuntarily terminated, a Special Cash Balance Account Credit was added to their cash balance account at termination. |
| Optional forms of retirement benefits | Each unmarried participant receives a monthly retirement benefit commencing upon retirement and terminating upon death. |
| | Each married participant receives an actuarially equivalent benefit providing him with a reduced retirement benefit commencing on his retirement date with 50% of such reduced retirement benefit to be continued during the lifetime of his surviving spouse. |
| | A participant may elect the following additional optional forms of payment: |
| | ▪ Life annuity<br>▪ 50% joint & survivor<br>▪ 75% joint & survivor<br>▪ 100% joint & survivor<br>▪ 10 year certain and life<br>▪ Lump sum. |
| | For participants who retire after age 55 and meet the rule of 70 and elect an annuity payment form, an enhancement is provided equal to 30% at age 55 grading down to 3% at age 64. |

## Changes in Plan Provisions Since the Previous Valuation

Effective May 2009, a select group of involuntarily terminated employees are eligible for a special termination benefit.

# Summary of Plan Provisions (continued)

QSP Field and QSP Products and Programs Plan Provisions for Benefits Accrued through June 30, 2008

| | |
|---|---|
| Effective date and plan year | November 1, 1953. The plan year is July 1 to June 30. |
| Most recent amendment | Effective July 1, 2008. |
| Participating employees | These provisions applied to all employees (except QDS and Good Catalogue employees) prior to July 1, 1999. Effective July 1, 1999, these provisions apply only to QSP Field employees and participants who qualified for long term disability prior to July 1, 1999. Effective July 1, 2002, QSP Field employees include QSP Products and Programs employees, effective September 1, 2004, QSP Field Assistants not already participants as of that date are not eligible, and effective August 2008 QSP was sold and QSP employees are no longer actively participating in this plan. |
| Eligibility | Age 21 and one year of service. |
| Contributions | The Company bears the full cost of benefits under the plan since July 1, 1981. |
| Service considered | Credited service includes all service except service when an employee elected not to participate in the plan. For employees of RD Publications, credited service includes service after July 1, 1992. For employees of Joshua Morris, credited service includes service after January 1, 1991. For employees of QSP Products and Programs, credited service includes service after July 1, 2002. |
| Compensation considered | Retirement salary is base salary and article payments. Incentive salary includes base salary, net commission income, and overrides. |
| Average annual compensation | Retirement Salary averaged over three consecutive years during the last 10 years of participation which provides the highest average. |
| Covered compensation | The average of the Social Security Wage Bases over the 35 calendar years up to the calendar year which ends in the plan year. |
| Normal retirement age | Age 65. |
| Early retirement age | Age 55 and five years of service. |

**Actuarial Valuation Report for the Fiscal Years**
**Ending June 30, 2008 and June 30, 2009**                                    The Reader's Digest Association, Inc.

# Summary of Plan Provisions (continued)

| | |
|---|---|
| Normal retirement benefit | A participant retiring on or after his normal retirement date is entitled to an annual pension determined as the greatest of (a), (b) or (c): |
| | (a)  56% of final 3 year Average Annual Compensation up to Covered Compensation |
| | plus |
| | 73% of final 3 year Average Annual Compensation in excess of Covered Compensation, proportionately reduced if years of Credited Service are less than 35 years. |
| | In addition, employees will accrue 2% of final 3 year Average Annual Compensation for all years of Credited Service in excess of 35 years. |
| | (b)  1½% of five year average Incentive Salary at July 1, 1997 times years of service prior to July 1, 1997 |
| | plus |
| | 1½% of each year's Incentive Salary for years after July 1, 1997. |
| | (c)  Benefit levels grandfathered after each benefit formula change. |
| | The benefit is frozen based on compensation and Credited Service as of August 31, 2004 for QSP Field Assistants and as of June 30, 2008 for all other participants. |
| Early retirement benefit | A participant who retires after age 55 and meets the rule of 70 is entitled to a benefit as defined above based on service and salary as of his retirement date. The benefit is not reduced if the participant retires at or after age 62. If retirement is prior to age 62, the benefit is reduced by 5% for each year retirement precedes age 62. |
| | For employees who do not meet the rule of 70, or any grandfather provisions, the benefit is reduced by 1/15 for each of the first five years and 1/30 for each additional year that benefits commence prior to age 65. |
| Deferred vested benefit | An employee who terminates employment after at least 3 years of service (or 5 years of service for terminations prior to July 1, 2008 or active at the time of the QSP sale) is entitled to a retirement benefit at age 65 based on service and compensation at date of termination (or the date the benefit is frozen, if earlier). A participant may elect to receive his benefit as early as age 55, reduced by 1/15 for each of the first five years and 1/30 for each additional year that benefits commence prior to age 65. |
| | Due to the transfer of pension assets to a retiree health account all participants as of June 30, 2003 are vested in their June 30, 2003 accrued benefit. |
| Disability benefit | Participants who receive benefits under the Company's long-term disability plan continue to accrue benefits while disabled through June 30, 2008 based on compensation at the date of disability. |

**Actuarial Valuation Report for the Fiscal Years**    The Reader's Digest Association, Inc.
**Ending June 30, 2008 and June 30, 2009**

## Summary of Plan Provisions (continued)

| | |
|---|---|
| Death benefit | *Pre-Retirement Death Benefit*: A married participant continuing in employment after becoming vested is covered by a pre-retirement joint and survivor benefit unless the participant and spouse waive coverage. Such benefit provides for payment of the 50% surviving spouse's retirement benefit during the life of the deceased participant's spouse from the time the participant would have been eligible for early retirement. Participants electing to be covered for this benefit will have the benefits otherwise payable at their normal retirement dates reduced by 1/3% for each year their elections are in effect. |
| | *Post Retirement Death Benefit*: Upon the death of a retired participant who retired from active status prior to July 1, 1999, a lump sum payment of $2,000 is paid. Also, any excess of the participant's accumulated contributions over all retirement benefits paid are refunded following the death of the participant and his beneficiary. |
| Optional forms of retirement benefits | Each unmarried participant receives a monthly retirement benefit commencing upon retirement and terminating upon death. |
| | Each married participant receives an actuarially equivalent benefit providing him with a reduced retirement benefit commencing on his retirement date with 50% of such reduced retirement benefit to be continued during the lifetime of his surviving spouse. |
| | A participant may elect the following additional optional forms of payment:<br>▪ Life Annuity<br>▪ 50% joint & survivor<br>▪ 75% joint & survivor<br>▪ 100% joint & survivor<br>▪ 10 year certain and life<br>▪ Lump sum, if value is no greater than $20,000. |
| Voluntary Separation Program | Employees whose age and years of service equaled at least 70 (after the "special accrual period" was added to each) who elected to terminate on March 29, 1996 received an enhanced retirement benefit. The enhanced benefit was determined by adding one month for each complete year of service not to exceed 24 months (the special accrual period) to the participant's years of service as of the termination date. The benefit commenced after a period from the termination date equal to one month per year of service (not to exceed 24 months) for exempt employees and two weeks per year of service for nonexempt employees. Benefits were reduced by 5% per year for commencement ages below 62 to age 50 and an additional 2% per year for commencement ages below age 50. |

### Changes in Plan Provisions Since the Previous Valuation

Effective August 2008, QSP was sold and all QSP employees still active as of the sale date became 100% vested.

# Summary of Plan Provisions (continued)

## (B) Reader's Digest Excess Plan

The plan is an unfunded non-qualified plan.

| | |
|---|---|
| Benefit provided | Upon retirement, the Excess Plan provides the additional benefits which would have been provided by the Retirement Plan had benefit limitations under IRC Section 415 not applied and had annual compensation under the Retirement Plan not been limited to $200,000 (as indexed). |
| Contributions | The company bears the full cost of benefits as for the Retirement Plan. |

## (C) Executive Retirement Plan

The plan is an unfunded non-qualified plan.

| | |
|---|---|
| Effective date | July 1, 1992 as amended. |
| Eligibility | Employees at grade level 21 and higher subject to approval by the CEO and participants in the plan as of July 1, 1992. No new participants as of October 1, 1999. |
| Retirement salary | Retirement Salary is the average of the highest 3 consecutive years out of the last 10 years of base salary and management incentive bonus. |
| Credited service | Credited Service is defined in the Reader's Digest Retirement Plan. Participants at grade level 21 and higher earn an additional year of credited service for each year of service after 4 full years of credited service to the extent the participant's age at date of hire exceeds 45 and only to the extent credited service is less than 20 years. |
| Normal retirement | A participant is eligible for normal retirement after attainment of age 65. |
| Early retirement | Early retirement is permitted if the participant has attained age 55, and the sum of the participant's age plus years of service equals at least 65. |

**Actuarial Valuation Report for the Fiscal Years**          The Reader's Digest Association, Inc.
**Ending June 30, 2008 and June 30, 2009**

## Summary of Plan Provisions (continued)

| | |
|---|---|
| Normal retirement benefits | A participant retiring on or after his normal retirement date is entitled to an annual pension determined as: |
| | (1) 3% of Retirement Salary for each of the first 15 years of credited service, plus 1% of Retirement Salary for each of the next 20 years of credited service |
| | less |
| | (2) (a) Reader's Digest Retirement Plan Benefit |
| | (b) Reader's Digest Excess Plan Benefit |
| | (c) SERP Agreement Benefit to the extent provided by Employer Contributions |
| | (d) Annualized benefit from company's contribution to the qualified profit sharing plan in excess of 6% of Retirement Salary, accumulated at 8%. |
| Early retirement benefits | Early retirement benefits are equal to the Normal Retirement Benefit based on service and salary at the time of retirement, reduced 5% for each year retirement precedes age 62. |
| Pre-retirement death benefit | Upon death after attainment of age 55 and the completion of 5 years of service, the surviving spouse shall receive the benefit that he/she would otherwise have received had the participant terminated prior to death and been entitled to a 50% qualified joint and survivor annuity. |
| Termination of employment | No benefits are provided upon termination prior to meeting the eligibility for early retirement. |
| Contributions | The company bears the full cost of benefits under the plan. |

09-23529-rdd    Doc 732    Filed 04/30/10    Entered 04/30/10 17:01:08    Main Document
Pg 69 of 74

Actuarial Valuation Report for the Fiscal Years                                          The Reader's Digest Association, Inc.
Ending June 30, 2008 and June 30, 2009

# Summary of Plan Provisions (continued)

## (D) Executive Cash Balance Plan

The plan is an unfunded non-qualified plan.

| | |
|---|---|
| Effective date | October 1, 1999. |
| Eligibility | Employees at grade level 21 and higher subject to approval by the CEO and participants in the Executive Retirement Plan as of October 1, 1999. |
| Retirement salary | Retirement Salary is base salary and management incentive bonus. |
| Base credits | Annual Credit (September) is 20% of Retirement Salary less annual base credit from the Retirement Plan. |
| Interest credits | 50% of the account is notionally invested in RDA stock and 50% is notionally invested by the executive in 401(k) funds. |
| Vesting | Percentage vested is based on years of participation in the Executive Retirement and Executive Cash Balance Plans. Vesting may vary based on an Executive's contract.<br><br>% Vested — Years of Participation<br>50% — 5<br>60% — 6<br>70% — 7<br>80% — 8<br>90% — 9<br>100% — 10 |
| Pre-retirement death benefit | The current account balance is paid out to the designated beneficiary upon the death of the active participant. |
| Payment options | 10-year certain only annuity. |

## (E) SERP Agreements (1981 & Later including QSP)

The plan is an unfunded non-qualified plan.

| | |
|---|---|
| Benefits | Agreements were made with certain executives whereby the company will pay individually specified retirement benefits for a 15 year certain period. In most agreements, the executives agreed to defer a portion of their annual bonuses for up to 5 years in exchange for the retirement benefits. |
| Termination of employment | The executive is vested in his benefits when he has deferred the agreed upon bonuses. Bonus amounts to be deferred could be prepaid. |
| Retirement | Executives can retire as early as age 55. The benefits are reduced by 3% for each year by which retirement precedes age 65. |
| Pre-retirement death | On death in service, the lump sum death benefit is $750,000. |

# Summary of Plan Provisions (continued)

## (F) Direct and Roving Editors Plans

The plan is an unfunded non-qualified plan.

| Benefits | |
|---|---|
| Direct Plan | The benefits paid under this plan reflect retirement benefit agreements made with individual employees. It also includes retirement benefits payable to Directors of the company. |
| Roving Editors Plan | Upon retirement or termination, this plan provided the benefits from the Reader's Digest Retirement Plan calculated using service from original retainer date reduced by benefits actually payable from the Reader's Digest Retirement Plan and Reader's Digest Excess Plan. There are no longer any active participants in the plan. |
| Contributions | The company bears the full cost of benefits under the plan. |

## (G) Post Retirement Welfare Plans

| | |
|---|---|
| Eligibility | Employees of specified companies hired before July 1, 2005 retiring from active service after the earliest retirement age specified in the table below, if the sum of their age and years of service totals 70. Employees must have participated in the active medical plan for one year prior to retirement. |

| Attained age as of July 1, 2005 | Earliest retirement age to be eligible for benefits |
|:---:|:---:|
| 50 or over | 55 |
| 49 | 56 |
| 48 | 57 |
| 47 | 58 |
| 46 | 59 |
| 45 | 60 |
| 44 | 61 |
| 43 | 62 |
| 42 | 63 |
| 41 | 64 |
| 40 or under | 65 |

**Actuarial Valuation Report for the Fiscal Years
Ending June 30, 2008 and June 30, 2009**                    The Reader's Digest Association, Inc.

## Summary of Plan Provisions (continued)

### Standard Medical Plan Benefits for All Retirees Over Age 65 and for Retirees Under Age 65 Who Reside in Non-Network Areas

| | |
|---|---|
| Lifetime maximum | $1,000,000. |
| Deductible | Hospital – $400 per admission. |
| | Medical and Surgical – $150 per individual/$300 per family. |
| | Pharmacy – $200 per individual/$400 per family. |
| Out-of-pocket maximum | $2,500 per individual/$5,000 per family not including prescription drugs. |
| Coinsurance | The plan covers 100% (after the Hospital deductible) of charges for hospital room and board and other hospital services and supplies. |
| | After the medical and surgical deductible is satisfied, the plan covers 80% of other major medical services. |
| | After the pharmacy deductible, the plan covers 75% of retail pharmacy costs. |
| | There is a mail order prescription drug program with 20% employee copayment on generic prescriptions and 20% employee copayment on brand name prescriptions (provided the brand drug has been specified as medically necessary by a doctor). |
| Medicare coordination | True carveout. |

### Point of Service Plan Medical Benefits for all Retirees Under Age 65 Who Reside in a Network Area

| | |
|---|---|
| Lifetime maximum | $1,000,000. |
| In network benefits | Primary Physician visits are covered at 100% after a $20 copay. |
| | Specialist visits are covered at 100% subject to a $35 copay. |
| | Other medical services are covered at 90% subject to an out of pocket maximum of $2,750 per person and $5,500 per family. |
| Out of network benefits | After a $800 per person/$1,600 per family deductible, the plan covers all services at 60% of the reasonable and customary charge subject to an out of pocket maximum of $5,000 per person and $10,000 per family. |

The Reader's Digest Association, Inc.

## Summary of Plan Provisions (continued)

| | |
|---|---|
| Prescription drugs | Prescription drugs obtained from a network pharmacy are covered at 80% with a minimum copay of $7 for the initial fill and 2 refills. After these fills, to encourage use of mail order, prescription drugs are covered at 80% with a minimum copay of $15. |
| | Prescription drugs obtained from mail order are covered at 80% with a minimum copay of $15. |
| | Prescription drugs obtained from a non network retail pharmacy are covered at 60% after the deductible. |
| | The retiree is required to pay the full cost differential between a brand used and the generic equivalent. The only exception is if the brand drug has been specified as medically necessary by a doctor. |

### Retiree Contributions for Medical Plan Benefits

| | |
|---|---|
| Retired before 1/1/1985 | The full cost of coverage is paid for by the company once the retiree/ spouse attains age 65. |
| Retired after 1/1/1985 | Annual contributions effective 1/1/2008 were as follows: |

| | Not Medicare-Eligible | Medicare-Eligible |
|---|---|---|
| Retiree | $1,800 | $1,700 |
| (Spouse pays the same) | | |

| | |
|---|---|
| 2009 and later | The portion of the cost of postretirement medical paid for by the Company will be subject to specified maximums. The maximum for pre-Medicare benefits per covered person will be $500 for each year of service between age 40 and age 65, but no more than $7,500. This amount drops to $3,750 in 2013. The maximum for post-Medicare benefits per covered person will be $1,200 (rule of 70 by 7/1/04) or $900 (all others). These amounts drop to $0 in 2013. Retirees will pay the contributions described above or, if greater, the difference between the cost of coverage and the amount paid for by the company. |

### Dental Plus Plan

| | |
|---|---|
| Eligibility | Same as the Medical Plan. |
| Annual deductible | $75 per individual/$150 per family. |
| Maximum benefits | $1,500 per person per year. The plan will pay a lifetime maximum of $1,500 for orthodontic expenses per person. |

**Actuarial Valuation Report for the Fiscal Years**            The Reader's Digest Association, Inc.
**Ending June 30, 2008 and June 30, 2009**

## Summary of Plan Provisions (continued)

| | |
|---|---|
| Coinsurance | Oral exams, twice-a-year cleaning, and x-rays are reimbursed at 100% of reasonable and customary charges, with no deductible. |
| | After the deductible has been satisfied, emergency treatment, extractions, oral surgery, fillings, anesthesia, periodontics and denture repair are reimbursed at 80% of reasonable and customary charges. |
| | After the deductible has been satisfied, major dental services such as addition of teeth, inlays, bridgework, and installation of dentures and orthodontic services are reimbursed at 50% of reasonable and customary charges. |
| Retiree contributions if retired before 1/1/1985 | The full cost of coverage is paid for by the company. |
| Retiree contributions for all other retirees | Annual contributions effective 1/1/2008 were $348 per covered adult. |
| | Contributions will increase gradually through July 1, 2010 until retirees will be paying the full cost of coverage. |

## Changes Since the Prior Valuation

None.

# MERCER

Mercer (US) Inc.
601 Merritt 7
Norwalk, CT 06856
203 229 6000

 MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

**Consulting. Outsourcing. Investments.**